Argued and submitted July 13, 1999, reversed and remanded in part; otherwise affirmed May 31, 2000

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL NO. 48,
on behalf of its members previously employed
by Industrial Construction Services, Inc.;
Trustees of Harrison Electrical Workers Trust Fund,
Edison Pension Trust, Metro Electrical Joint
Apprenticeship and Training Trust,
National Employees Benefit Fund,
Ninth District Retirement Plan; and
Collection Agent for Employees
covered under the Electrical
Workers Local 48 Administrative Fund,
*Appellants,*

*v.*

OREGON STEEL MILLS, INC.,
a Delaware corporation,
dba Oregon Steel Mills;
Chemical Bank, as Trustee for the holders
of the first mortgage notes due 2003,
nka The Chase Manhattan Bank;
Anixter, Inc.,
an active Delaware corporation;
J.H. Kelly, Inc.,
an inactive Washington corporation;
and Air Products and Chemical, Inc.,
an active Delaware corporation,
*Respondents,*

*and*

RESOURCE TECHNOLOGIES GROUP, INC.;
Star Industries, Inc.,
dba Star Rentals and Sales;
Consolidated Electrical District;
Vancouver Bolt and Supply, Inc.;
Wesco Distribution, Inc.; A.C. Dellovade, Inc.;
Dick Industrial, Inc., fka Dick Corporation;
International Mills Services Corporation;
and Industrial Construction Service,
*Defendants.*

(9704-02954; CA A101903)

5 P3d 1122

Thomas W. Sondag argued the cause for appellants. With him on the briefs was Lane Powell Spears Lubersky.

Daniel K. Reising argued the cause and filed the brief for respondent Oregon Steel Mills, Inc.

No appearance for respondents Chemical Bank, Anixter, Inc., J.H. Kelly, Inc., and Air Products and Chemicals, Inc.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

The trial court granted defendants' motion to dismiss plaintiffs' complaint for failure to state a claim. It ruled that plaintiffs either lacked standing to foreclose a lien against defendants' property or that federal law preempted plaintiffs' lien. The court accordingly entered judgment in defendants' favor and awarded them attorney fees. Plaintiffs appeal. We affirm the judgment in part, reverse it in part, and remand.

The International Brotherhood of Electrical Workers Local Number 48 (the union) entered into a collective bargaining agreement with the Oregon-Columbia Chapter of the National Electrical Contractors Association.[1] The agreement requires subject employers to make contributions to various union trust and administrative funds. Beginning in March 1996, "employees of [Industrial Construction Services, Inc. (ICS)] performed labor under the terms of the Bargaining Agreement, on certain construction projects" for defendant Oregon Steel Mills (OSM). ICS, however, failed to make contributions to the union trust and administrative funds for the work done on those projects. In December 1996, the union, the trustees of the trust funds, and the collection agent filed notice of a construction lien claim pursuant to ORS 87.010(1) and ORS 87.010(4) for $532,184.79 for delinquent contributions and penalties.[2]

In April 1997, three classes of plaintiffs filed this action to foreclose the lien. Plaintiffs consist of the union, the

---

[1] Because this appeal arises on defendants' motion to dismiss, "we assume the truth of all well-pleaded facts alleged in the complaint and give plaintiff[s], as the nonmoving part[ies], the benefit of all favorable inferences that may be drawn from those facts." *Bradbury v. Teacher Standards and Practices Comm.*, 328 Or 391, 393, 977 P2d 1153 (1999).

[2] Plaintiffs obtained a judgment against ICS for that amount in federal court. The judgment remains unpaid. Most of the money plaintiffs seek in their lien claim against OSM (and presumably in their federal action against ICS) is for contributions that ICS was supposed to pay to five trust funds. They also seek contributions that ICS was supposed to pay to six administrative funds. It appears from the complaint that ICS's employees have only a beneficial interest in the contributions ICS was supposed to make to the trust funds. It also appears that ICS's employees have a legal interest in the contributions that ICS was supposed to make to the administrative funds.

trustees of trust funds, and the collection agent for the employees covered under the administrative funds.[3] OSM moved to dismiss the complaint for failure to state a claim. *See* ORCP 21 A(8). The trial court granted the motion. It ruled that none of the plaintiffs had standing to foreclose a lien created under ORS 87.010(1). It also ruled that, although the trustees had standing to enforce a lien created under ORS 87.010(4), the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC § 1001 *et seq.*, preempted that lien. Finally, the court held that OSM was the prevailing party and ordered the trustees to pay OSM its attorney fees.[4]

With one exception, the parties pursue the same issues on appeal that they raised below.[5] We begin with the question of standing to enforce a lien created under ORS 87.010(1). ORS 87.010 provides, in part:

"(1) Any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement or the construction agent of the owner.

"* * * * *

---

[3] The caption of the case identifies plaintiffs as the union, the trustees for the trust funds, and the collection agent for employees covered by the administrative funds. The body of the complaint, however, alleges that plaintiffs consist of the union and various trust and administrative funds, which the complaint denominates collectively as the "trust funds." The complaint does not allege that the trustees are plaintiffs, nor does it allege that the collection agent is a plaintiff. Defendants have not questioned that discrepancy; they have instead proceeded on the assumption that the union, the trustees, and the collection agent are the plaintiffs in this case. Had defendants raised an objection below, plaintiffs could have replied. We accordingly assume, as the parties have both below and on appeal, that the plaintiffs consist of the entities named in the caption.

[4] The trial court ordered the trustees, as the nonprevailing party, to pay OSM's attorney fees. The court did not hold the union or the collection agent responsible for attorney fees because it had dismissed them for lack of standing. The court also entered a judgment to that effect. OSM has not cross-appealed from the trial court's judgment limiting the entities that are liable for its attorney fees.

[5] Plaintiffs' second amended complaint alleges two claims for relief. The trial court dismissed both claims. Plaintiffs' assignments of error are directed only to the dismissal of their first claim for relief.

"(4)  Trustees of an employee benefit plan shall have a lien upon the improvement for the amount of the contributions, due to labor performed on that improvement, required to be paid by agreement or otherwise into a fund of the employee benefit plan."

The parties do not dispute that because ICS's employees performed labor on the OSM project, they have a lien under ORS 87.010(1). The question is whether any of the plaintiffs may also foreclose a lien created under that subsection.

■    Plaintiffs argue that the trustees may foreclose a lien created under ORS 87.010(1) to recover the amount of the contributions that ICS was supposed to pay the trust funds. ORS 87.010(4), however, expressly gives the trustees a lien for that purpose. If plaintiffs' interpretation of ORS 87.010(1) were correct, ORS 87.010(4) would become a nullity. Settled principles of statutory construction counsel against that interpretation. *See* ORS 174.010; *State v. Cook*, 163 Or App 578, 586, 989 P2d 474 (1999). Moreover, the legislature added what is now ORS 87.010(4) in 1973 in order to provide a lien for "fringe benefits payable by contributions from employers." Minutes, House Judiciary Committee, HB 3272, June 21, 1973, p 4 (testimony of Paul Bailey). If the trustees of a trust fund have a lien against OSM's project, it arises under ORS 87.010(4), not ORS 87.010(1).[6]

■    If the trustees may not enforce a lien created under ORS 87.010(1), the next question is whether the union may do so. Plaintiffs argue that it may for two reasons. First, relying on *Christman v. Salway*, 103 Or 666, 686, 205 P 541 (1922), plaintiffs claim that the union "has standing in its own right as the provider of labor" to enforce a lien on OSM's property. The court recognized in *Christman* that if a subcontractor's employees performed the labor on a project either the subcontractor or its employees would qualify as "persons performing labor" within the meaning of the lien statute.[7] *Id.*;

---

[6] It is unclear from the pleadings whether plaintiffs regard the collection agent as a "trustee" of the administrative funds (which their complaint calls trust funds) for the purposes of ORS 87.010(4). Plaintiffs, however, have not argued that theory on appeal, and we do not consider it.

[7] The lien law at issue in *Christman* was substantially identical to the current version of ORS 87.010(1). *See* 103 Or at 671 (describing lien law).

*accord Nicolai-Neppach Co. v. Poore et al.*, 120 Or 163, 174, 251 P 268 (1926) (accepting that either the laborers or the laborers' employer would be entitled to a lien). Although the court did not explain the rationale for its holding, it presumably relied on principles of agency law to hold that if a contractor's employees perform labor on a project within the meaning of the lien law, so does the contractor. *See id.*

*Christman* does not advance the union's argument here. The complaint does not allege that the union's employees or its agents performed work on the project. Rather, it alleges that the union's members performed work as ICS's employees. Under *Christman*'s interpretation of what is now ORS 87.010(1), that allegation would be sufficient to give ICS a lien against OSM's project, but it is insufficient to give the union one. *See Bicycle Transportation Alliance v. City of Portland*, 133 Or App 422, 424, 891 P2d 692, *rev den* 321 Or 429 (1995) (in reviewing a dismissal for failure to state a claim, a court is limited to the facts alleged in the complaint).

Plaintiffs advance a separate argument. They argue that the union may bring an action to enforce a lien, not on its own behalf, but on its members' behalf.[8] Under Oregon law, the question "whether an organization has standing [to bring an action to enforce its members' rights] depends upon whether the statute under which the organization brings suit allows it to do so." *Oregon Taxpayers United PAC v. Keisling*, 143 Or App 537, 541, 924 P2d 853, *rev den* 324 Or 488 (1996), *cert den* 520 US 1252 (1997). Applying familiar principles of statutory construction, the Supreme Court held in *Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 565-67, 919 P2d 1168 (1996), that a union did not have standing to assert claims on behalf of its members under ORS 183.484 because that statute made no mention of representational standing and the statutory context did not support an inference that the statute authorized such standing.

---

[8] OSM does not argue that, because ICS's employees have only a beneficial interest in the contributions that ICS owed the trust funds, the employees' lien under ORS 87.010(1) is limited to the contributions that were supposed to be deducted from their wages and paid to the various administrative funds. We accordingly do not consider that issue.

■ Plaintiffs face the same problem here. ORS 87.010(1) provides that "[a]ny person performing labor upon * * * any improvement" has a lien for that labor. The terms of that subsection give the person who performs the labor a lien. The statute, however, does not authorize an organization to sue in a representational capacity, nor does the context suggest such an intent. Rather, the context points in the other direction. ORS 87.035(1) specifies the steps "[e]very person claiming a lien under ORS 87.010(1)" shall take to perfect the lien. Finally, ORS 87.060 provides that "[a] suit to enforce a lien perfected under ORS 87.035 shall be brought in circuit court, and the pleadings, process, practice and other proceedings shall be the same as in other cases." Read together, those statutes establish that the lien claimant—the person to whom ORS 87.010(1) gives the lien—is the person who may bring a foreclosure action to enforce the lien.[9] As a matter of state law, the union lacks standing to enforce its members' lien rights.[10]

■ Plaintiffs argue, however, that federal labor law authorizes the union to bring an action to protect its members' rights in the collective bargaining agreement. *See Automobile Workers v. Hoosier Corp.*, 383 US 696, 700, 86 S Ct 1107, 16 L Ed 2d 192 (1966); *Office and Professional Employees v. FDIC*, 962 F2d 63 (DC Cir 1992). The federal cases on which plaintiffs rely are based on section 301 of the Labor

---

[9] The court explained in *Brice Mortgage Co. v. Wodtke et al*, 215 Or 192, 194, 332 P2d 1044 (1958), that, since 1870, it has adhered to the rule "that the right to perfect a mechanic's lien by filing the notice required by law is a privilege personal to the party performing the labor * * * and not assignable" until after the lien is perfected. The court's recognition that the right to a mechanic's lien and the right to perfect are rights personal to the worker performing the labor is at odds with the union's argument that an organization may assert the right on its members' behalf. Although the lien may be assigned after it is perfected, plaintiffs have not alleged that such an assignment occurred in this case.

[10] Plaintiffs argue that ORCP 26 A authorizes the union to sue to foreclose its members' lien under ORS 87.010(1). There is a substantial question whether plaintiffs preserved this issue below. Even if they did, ORCP 26 A provides that "a party * * * in whose name a contract has been made for the benefit of another * * * may sue in that party's own name without joining the party for whose benefit the action is brought[.]" The union, however, is not attempting to sue on the collective bargaining agreement. Rather, it is suing to foreclose a lien created under ORS 87.010(1), the value of which may or may not be measured by the collective bargaining agreement. ORCP 26 A does not authorize the union to do that.

Management Relations Act, 29 USC § 185. Although section 301 authorizes labor organizations to sue on behalf of their members, it "does not transform labor unions into the all-purpose 'general litigation agent[s]' of employees." *Office and Professional Employees*, 962 F2d at 66 (brackets in original). Rather, as the court of appeals explained in the case on which plaintiffs primarily rely, a labor organization will be an appropriate party to vindicate employees' rights "when [the] claim derives from [the] collective bargaining agreement." *Id.* at 66. Applying that principle, the court held that the union could sue the statutory successor of a failed bank to recover benefits that the bank had agreed, as part of a collective bargaining agreement, to pay its employees. *Id.*

In this case, the union is not bringing a claim under section 301. It is not suing the employer (or the employer's successor) to enforce the terms of the collective bargaining agreement. The union has already done that. *See* n 2 above. Rather, the union is attempting to use the state lien law to enforce a claim against the project owner for wages that its members are owed. The lien, if enforced, will be against the property involved in the project, not against the person who employed the union's members or signed the collective bargaining agreement. Moreover, the amount of a lien under ORS 87.010(1) may not necessarily be tied to the terms of the collective bargaining agreement. *Compare Lakeview Drilling Co. v. Stark et al*, 210 Or 306, 313-14, 310 P2d 627 (1957) (because the plaintiff was not an "original contractor" as defined by the statute, the measure of the plaintiff's lien was the reasonable value of the labor and materials supplied rather than the contract price) *with A-C Construction, Inc. v. Bakke Corp.*, 153 Or App 41, 50-51, 956 P2d 219, *rev den* 327 Or 553 (1998) (amount of the lien based on contract where subcontractor asserted lien against contractor and parties were in privity). An action to enforce a lien under ORS 87.010(1) is too far removed from the collective bargaining agreement to come within the ambit of section 301.

■     Plaintiffs argue finally that the collection agent may bring an action to enforce a lien created under ORS 87.010(1). The complaint, however, contains no allegation that would suggest that the collection agent has any greater role than as

an agent for either the union or the trustees of the trust funds.[11] If the trustees and the union cannot bring an action to enforce a lien created under ORS 87.010(1), neither can the collection agent. It follows that, under the allegations in plaintiffs' complaint, only those plaintiffs who claim a lien under ORS 87.010(4) have standing to bring a foreclosure action to enforce that lien.

■        We accordingly turn to the question whether ERISA preempts ORS 87.010(4). Congress may preempt state law either by express provision, by implication, or by a conflict between federal and state law. *New York Blue Cross v. Travelers Ins.*, 514 US 645, 654, 115 S Ct 1671, 131 L Ed 2d 695 (1995); *accord Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 398, 908 P2d 308 (1995).[12] OSM does not argue that the state lien law conflicts with any substantive provision of ERISA. Rather, its preemption argument is based on section 1144(a) of ERISA, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 USC § 1144(a) (1994).

The question whether a state law "relate[s] to" an employee benefit plan within the meaning of ERISA has been

---

[11] The complaint alleges that "[t]he collection agent for IBEW Local 48 and the Trust Funds is the Oregon-S.W. Washington NECA-IBEW Electrical Workers Delinquency Committee ('Collection Agent')." That allegation identifies who the collection agent is; it does not allege what role the collection agent plays. An exhibit attached to the notice of construction lien claim, which is itself attached to the complaint and incorporated by reference, alleges that an "[a]ction to collect contributions may be brought in the name of the respective Fund involved, its Trustees or any assignee or agent designated by said trustees." The complaint does not allege, however, that the trustees or anyone has designated the collection agent as an agent in whose name an action could be brought to collect the contributions. Similarly, there is no allegation of any assignment. Finally, plaintiffs have not explained how the workers entitled to a lien under ORS 87.010(1) could assign or transfer their right to the collection agent to enforce their lien before the lien is perfected. *See Brice Mortgage Co.*, 215 Or at 194 (assignment in advance of perfection insufficient to transfer claimant's lien rights). In short, the allegations relating to the collection agent are too scattered and unconnected to establish an independent right for the collection agent to foreclose a lien created under ORS 87.010(1).

[12] Whether ERISA preempts plaintiffs' claims under ORS 87.010(4) is a question of statutory interpretation. *See Shaw*, 322 Or at 398-99. We are bound by the United States Supreme Court, the Oregon Supreme Court, and this court's interpretations of that statute. We rely on the lower federal court decisions interpreting ERISA only to the extent that they are persuasive.

a recurring one. The Court's recent cases make clear that that phrase should not be read with an "uncritical literalism." *UNUM Life Ins. Co. of America v. Ward*, 526 US 358, 363, 119 S Ct 1380, 143 L Ed 2d 462 (1999); *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 US 806, 813-14, 117 S Ct 1747, 138 L Ed 2d 21 (1997); *New York Blue Cross*, 514 US at 655. As the Court has explained, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminancy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere[.]' " *New York Blue Cross*, 514 US at 655.

In seeking to mark the limits of ERISA preemption, the Court has reiterated that a state law will relate to an employee benefit plan if it either "refers to" or "is connected with" such a plan. *New York Blue Cross*, 514 US at 656; *Shaw v. Delta Air Lines, Inc.*, 463 US 85, 96-97, 103 S Ct 2890, 77 L Ed 2d 490 (1983). Each inquiry asks a separate question. In answering those questions, the Court has been mindful that Congress should not be understood to have preempted an area of traditional state regulation unless that was Congress' " 'clear and manifest purpose.' " *New York Blue Cross*, 514 US at 655 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 US 218, 220, 67 S Ct 1146, 91 L Ed 1447 (1947)); *accord California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 US 316, 324-25, 117 S Ct 832, 136 L Ed 2d 791 (1997).

■ A state law will "refer to" an ERISA plan in a way that results in preemption:

"[w]here a State's law acts immediately and exclusively upon ERISA plans, as in *Mackey* [*v. Lanier Collection Agency*, 486 US 825, 108 S Ct 2182, 100 L Ed 2d 836 (1988)], or where the existence of ERISA plans is essential to the law's operation, as in [*District of Columbia v.*] *Greater Washington Bd. of Trade*[, 506 US 125, 113 S Ct 580, 121 L Ed 2d 513 (1992),] and *Ingersoll-Rand* [*Co. v. McClendon*, 498 US 133, 111 S Ct 478, 112 L Ed 2d 474 (1990)] * * *."

*Dillingham*, 519 US at 325. *Dillingham* illustrates the Court's application of that test. The state law in *Dillingham* authorized contractors on public works projects to pay less

than the prevailing wage to persons in approved apprenticeship programs. 519 US at 319. The plaintiffs in *Dillingham* filed suit alleging that ERISA preempted that state law. They reasoned that ERISA defines an "employee welfare benefit plan" as "[a]ny plan, fund, or program * * * established or maintained by an employer * * * for the purpose of providing for its participants * * * *apprenticeship or other training programs* * * *." *Id.* at 322 n 2 (quoting 29 USC § 1002(1); emphasis in original). It followed, they concluded, that a state law setting wages for an apprenticeship program necessarily "referred to" an employee benefit plan within the meaning of ERISA and was thus preempted.

The Court reached a different conclusion. The state law did not refer specifically to an ERISA plan, as the state law in *Mackey* had, nor was the existence of an ERISA plan essential to the law's operation. In reaching the latter conclusion, the Court recognized that most apprenticeship programs subject to the state law would in fact be ERISA plans. *Dillingham*, 519 US at 327 and n 5. However, because "[n]o party before [the Court] ha[d] established that *all* [apprenticeship] programs" would be employee benefit plans within the meaning of ERISA, the Court held that the state law did not "refer to" an ERISA plan in a way that would result in preemption. *Id.* (emphasis in original). Rather, the fact that the law could apply to a non-ERISA plan was sufficient for the Court to say that the state law " 'function[ed] irrespective of . . . the existence of an ERISA plan.' " *Id.* at 328 (quoting *Ingersoll-Rand Co.*, 498 US at 139; ellipses in original).

■ Following *Dillingham*, we conclude that ORS 87.010(4) does not "refer to" an employee benefit plan within the meaning of ERISA. As noted above, ORS 87.010(4) provides that the "[t]rustees of an employee benefit plan shall have a lien upon the improvement for the amount of contributions, due to labor performed on that improvement, required to be paid by agreement or otherwise into a fund of the employee benefit plan." The phrase "employee benefit plan" in ORS 87.010 (4) was not intended to refer specifically to an ERISA employee benefit plan. *Compare Mackey*, 486 US at 838 n 12 (state law that specifically exempted the assets in ERISA plans from garnishment referred to an

ERISA plan and was thus preempted). Rather, Oregon's statute predates ERISA. *Compare* Or Laws 1973, ch 671, § 1 (adopting the predecessor to ORS 87.010(4)) *with* 88 Stat 832 (1974) (adopting ERISA). Because the Oregon legislature could not have intended in 1973 to refer specifically to an ERISA plan, ORS 87.010(4) will constitute an impermissible reference only if the state statute necessarily refers only to ERISA plans. *See Dillingham*, 519 US at 327-28 and n 5.

On appeal, the parties debate whether ORS 87.010(4) is necessarily limited to ERISA plans. Our own case law establishes that it is not. In *O'Hollaren v. Marine Cooks & Stewards Union*, 83 Or App 133, 136-37, 730 P2d 616 (1986), we concluded that individual employment contracts are not "plans" within the meaning of ERISA. In reaching that conclusion, we quoted Ralph M. Goodman and Laura E. Stone, *Exempt Compensation Arrangements Under ERISA*, 28 Cath L Rev 445, 452 (1979), for the proposition that providing pension benefits to an employee pursuant to an individual employment contract is not an employee benefit plan under ERISA. *Id.* at 137. Although such an arrangement is not an ERISA plan, there is no reason why a trustee could not rely on ORS 87.010(4) to assert a lien for unpaid contributions to a fund set up for the benefit of a single employee pursuant to an individual employment contract.[13]

It follows that ORS 87.010(4) does not act immediately and exclusively on ERISA plans, nor is the existence of ERISA plans essential to that subsection's operation. As the federal district court recently explained, ORS 87.010(4) "is indifferent to the nature of the employee benefit plans as

---

[13] Plaintiffs advance several other examples of exempt ERISA plans that would constitute "employee benefit plans" within the meaning of ORS 87.010(4). On that point, OSM acknowledges that a self-settled trust might not be an ERISA plan but argues that it is unlikely that employers would resort to such plans. OSM's argument appears misplaced in two respects. First, in *Dillingham*, the Court placed the burden of proof and persuasion on the party asserting ERISA preemption. *See Dillingham*, 519 US at 327 n 5 (noting that the plaintiffs had not established that all apprenticeship programs would be ERISA plans). To the extent there is uncertainty, it cuts against defendants. Second, this case arises on defendants' motion to dismiss, and no fact alleged in the complaint establishes the factual predicate for that aspect of defendants' preemption argument. Unless we can take judicial notice of those facts, we cannot say, on a motion to dismiss, that ORS 87.010(4) refers only to ERISA employee benefit plans.

ERISA or non-ERISA." *Trustees of Plumbers v. Farmington Cas. Co.*, 33 F Supp 2d 904, 907 (D Or 1998). We agree with the district court that ORS 87.010(4) does not refer to ERISA plans, as the Court explained that aspect of preemption in *Dillingham*.

■  Even though ORS 87.010(4) does not refer to an ERISA plan, it will still be preempted if it "has a connection with" an ERISA plan. In determining how far that test reaches, the Court has explained, "[f]or the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections." *New York Blue Cross*, 514 US at 656. The Court accordingly has "go[ne] beyond the unhelpful text" and looked instead to Congress' objective in passing ERISA to determine whether a state statute has an impermissible connection with an ERISA plan. *Id.*

The main objective of ERISA's preemption clause is "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *New York Blue Cross*, 514 US at 657. Providing a state remedy by which a trustee may recover assets owed an employee benefit plan does not conflict with that objective. It does not require plans to pay specific kinds of benefits, *Shaw*, 463 US at 97, nor does it dictate how plan benefits should be calculated, *FMC Corp. v. Holliday*, 498 US 52, 60, 111 S Ct 403, 112 L Ed 2d 356 (1990). *See also De Buono*, 520 US at 814-15. Rather, it simply provides an additional state remedy that the trustee of an employee benefit plan may but need not use to secure moneys owed the plan. Far from conflicting with Congress' purpose, the existence of the state remedy advances it.[14]

---

[11] Defendants rely primarily, if not exclusively, on the Second Circuit's decision in *Plumbing Industry Bd. v. E.W. Howell Co., Inc.*, 126 F3d 61 (2d Cir 1997), to argue that ORS 87.010(4) is connected to and thus preempted by ERISA. In that case, the Second Circuit recognized that "a state can—through generally applicable enforcement statutes that function irrespective of ERISA—enforce third-party obligations that are created without ERISA's mandate or influence." *Id.* at 69. Although the court recognized that such state remedies would not ordinarily be preempted, it held that New York's lien law was preempted, at least as applied to a claim against the general contractor.

The Second Circuit's holding may turn on one of three bases. First, to the extent it is based on the notion that the entity against whom the lien was asserted in that case was not a third party (but was instead a participant in the ERISA plan), that is not this case. OSM is a third party. Second, to the extent that the

Were there any doubt about the matter, an amendment that Congress enacted in 1980 dispels it. Before 1980, ERISA did not provide any remedy for trustees seeking to recover delinquent contributions to a trust fund. *See Vermeer v. Tomken Construction*, 49 Or App 37, 40, 618 P2d 1301 (1980). In 1980, Congress amended ERISA by enacting the Multiemployer Pension Plan Amendments Act. 94 Stat 1208 (1980). That amendment specifically provides a statutory remedy by which the trustee of an employee benefit plan may sue an employer to collect unpaid contributions to a multiemployer pension plan. 94 Stat 1295 (1980); 29 USC § 1132(g)(2).[15] The amended statute provides that in an action to recover unpaid contributions, the court shall award the plan any "liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal *or State law*)

---

court concluded that New York's lien law was not a generally applicable state law for enforcing obligations against third parties without regard to ERISA, we view ORS 87.010(4) differently: ORS 87.010(4) provided trustees with a remedy against third parties for delinquent contributions before ERISA was enacted. ORS 87.010(4) is a generally applicable statute to enforce obligations that exist independently of ERISA. Finally, to the extent that the Second Circuit believed that ERISA preempts general state law remedies against third parties, its holding is inconsistent with both the rationale in *Dillingham* and the holdings of the other courts of appeals. *See, e.g., Geweke Ford v. St. Joseph's Omni Pref. Care, Inc.*, 130 F3d 1355, 1358 (9th Cir 1997) (reasoning that whether the parties' relationships are governed by ERISA is a key issue in determining whether ERISA is preempted); *Thiokol Corp., Morton Intern., Inc. v. Roberts*, 76 F3d 751, 755-56 (6th Cir 1996) *cert den* 520 US 1271 (1997) (reasoning that there is no preemption where law affects relations between ERISA entity and non-ERISA entity, and effect on ERISA plans is slight); *Airparts Co. v. Custom Ben. Services of Austin*, 28 F3d 1062, 1065 (10th Cir 1994) (reasoning that "relations between one or more [ERISA] plan entities and an outside party * * * escape preemption"); *Perkins v. Time Ins. Co.*, 898 F2d 470, 473 (5th Cir 1990) (reasoning that "state law * * * which does not affect the relations among the principal ERISA entities * * * is not preempted by ERISA").

[15] 29 USC § 1132(g)(2) provides, in part:

"In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

"(A) the unpaid contributions[.]"

29 USC § 1145 states:

"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

* * *." 29 USC § 1132(g)(2)(C)(ii) (emphasis added). Additionally, the committee report that accompanied the amendment states that "[t]he Committee amendment does not change any other type of remedy permitted under State or Federal law with respect to delinquent multiemployer plan contributions." HR Rep No. 869, 96th Cong, 2d Sess (1980) (Part II), *reprinted in* 1980 USCCAN 3037, 3038.

Two propositions may fairly be drawn from the language of the amended statute and its legislative history. First, Congress understood that, before 1980, an action to collect delinquent contributions from an employer—a participant in an ERISA plan—could be brought under state law. Second, Congress did not intend to preempt such state law actions by enacting the Multiemployer Pension Plan Amendments Act. The 1980 amendment confirms that Congress did not intend that ERISA would preempt state law remedies, such as the lien laws, that give employee benefit plans remedies against third parties. Although the Multiemployer Pension Plan Amendments Act is not directly applicable here,[16] it makes clear that state law actions to collect unpaid contributions to employee benefit plans are within the scope of those state laws that Congress understood would survive, and thus are not "connected with" ERISA plans. *See Dillingham*, 519 US at 325. Because ORS 87.010(4) is not "connected with" and does not make "reference to" an ERISA plan, it does not "relate to" a covered employee benefit plan. *See Dillingham*, 519 US at 324-25. ERISA does not preempt the trustees' claims under ORS 87.010(4). *See id.*

Finally, plaintiffs challenge the trial court's ruling requiring the trustees to pay OSM its attorney fees. ORS 87.060(5) provides for an award of attorney fees to the prevailing party on issues of validity and foreclosure of a lien. Because the trustees' claims under ORS 87.010(4) are not

---

[16] The Multiemployer Pension Plan Amendments Act does not apply for two reasons. First, the amendment applies only to multiemployer plans and plaintiffs have not alleged that they are seeking contributions to a multiemployer plan. *See* 29 USC §§ 1132(g)(2), 1145. Second, the amendment provides an enforcement mechanism for participants, beneficiaries, and fiduciaries against an employer who is obligated to make contributions to a multiemployer plan. *See id.* In this case plaintiffs are seeking to enforce a lien against a third party, not the employer, but that fact simply confirms that ERISA does not preempt plaintiffs' remedy under ORS 87.010(4).

preempted by ERISA, OSM is not the prevailing party as to the trustees. The award of attorney fees against the trustees fails.[17]

Reversed and remanded as to plaintiffs' claims under ORS 87.010(4); otherwise affirmed.

---

[17] As noted above, the trial court awarded OSM fees only against the trustees. It ruled that OSM could not recover its attorney fees from either the union or the collection agent and entered a judgment to that effect. OSM has neither cross-appealed nor otherwise challenged that adverse ruling on appeal.