Argued and submitted September 11, 2000, reversed May 2, 2001

# In the Matter of the Marriage of

## Scott L. THOMASON,
*Respondent,*
*and*

## Diane THOMASON,
*Appellant,*
*and*

## Christopher THOMASON;
Gregory Thomason; and Taylor Thomason,
*Minor Children.*

### C93 1262 DR; A103041

23 P3d 395

Timothy J. Sercombe argued the cause for appellant. With him on the reply brief were J. Richard George, Allan F. Knappenberger and Preston Gates & Ellis LLP. On the opening brief were James N. Westwood, William F. Buchanan and Miller, Nash, Wiener, Hager & Carlsen LLP.

Laura Graser argued the cause and filed the brief for respondent.

Herbert A. Trubo argued the cause for minor children. With him on the brief was Sorensen-Jolink, Trubo, Williams, McIlhenny & Williams.

Kristin Paustenbach and Ann Su filed the brief *amicus curiae* for Juvenile Rights Project, Inc.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Mother appeals from the trial court's post-judgment order appointing an attorney for her children. She argues that ORS 107.425 did not authorize the court to make the appointment. We agree and reverse.

On February 28, 1994, the trial court entered a judgment dissolving mother and father's marriage and awarding mother custody of their three children. It appears that, shortly after the judgment was entered, the relationship between mother and one of the children Christopher began to deteriorate, and Christopher began to express a desire to live with father. On June 29, 1995, the trial court appointed an attorney, Susan Svetkey, to represent Christopher. Mother and father were to share equally in the cost. The court cited ORS 107.425(3) as the basis for the appointment.

In December 1995, by stipulation, the court modified the 1994 dissolution judgment and awarded custody of Christopher to father. During a hearing on the motion to modify, mother orally moved to terminate Svetkey's appointment and filed a memorandum in support of her motion. Mother argued, among other things, that ORS 107.425 did not provide authority for the court to appoint counsel because the motion to modify was no longer pending before the court. On January 3, 1996, the court denied mother's motion and entered an order stating that "Svetkey shall remain as attorney for Christopher Thomason until December 5, 1997, or further order of the court."

By its terms, the court's January 3, 1996, order continuing Svetkey's appointment expired in December 1997, and neither party moved to extend the appointment while that order remained in effect. In March 1998, father filed a motion to have Svetkey reappointed. Mother objected to the motion, and father subsequently withdrew the motion before a hearing could be held. Christopher then filed his own motion to reappoint Svetkey, which the trial court granted on April 15, 1998, without a hearing.[1] Mother's attorney sent a

---

[1] Father explained that he had withdrawn his motion because he thought the trial court would have discretion to deny it, whereas, in his view, if Christopher filed the motion to appoint counsel, the court was required to grant Christopher's motion under ORS 107.425.

letter to the court requesting a hearing on the matter and asking the court to postpone the decision until a hearing could be held. On April 24, the court withdrew its previous order appointing Svetkey and scheduled a hearing.

Svetkey sent a letter to the court on June 2, 1998, which stated: "I understand that the issue of my re-appointment as Christopher Thomason's lawyer has not yet been resolved and that we are awaiting a trial date." She told the court that she was enclosing a letter written by Christopher, which she was forwarding at Christopher's request. Christopher's letter was addressed to the trial judge and stated:

> "I have just talked to [Svetkey] hoping to consult her about this summer[']s dates, [b]ut [I] have just come under the impression that [Svetkey] is not my la[wy]er anymore. I feel that this is a time that I really need her to work things out for this summer[']s visitation schedu[le]. I also feel that I really need [Svetkey] right now because of the fact of the upcoming summer without a visita[t]ion schedu[le] worked out. I really think that I cannot wait for a hearing that does not even have a date yet. My mother is just stalling so she can catch me off[ ]g[ua]rd and I feel that when [I] don't have someone like [Svetkey] to help me through these times and work things out like summer visitation. Without [Svetkey], I think I will lose contact with my mom because there will be nobody to represent me in court and to set dates for visita[t]ion. I am stuck in the middle of huge battles between my parents about me and I have nobody to turn to when I need help and without [Svetkey] I am very vulnerable to being pulled back to my mother[']s side through m[a]nipulation. If you could please ap[p]oint [Svetkey] as my attorney or at least set a court date that is very soon, I would be very happy because I really need [Svetkey] right now to work things out between my parents and me."

Svetkey sent copies of the letter to father and mother's attorneys. In response, mother's attorney sent a letter to the court objecting to the request to appoint Svetkey on several grounds. Despite mother's objections, and without holding a hearing, the trial court sent a letter to Svetkey, which stated, in part:

> "I received a copy of the letter from Christopher Thomason. I will appoint you to represent the Thomason

children. Please prepare the appropriate order for my signature."

Mother's attorney sent a letter to the court objecting to its decision to appoint Svetkey to represent the children, arguing that the court lacked statutory authority to do so and that a hearing should have been held before the appointment. On July 6, 1998, the court entered an order appointing Svetkey as attorney for all three children. According to the parties, the only matter before the trial court at that time was Christopher's motion requesting that Svetkey be appointed to represent him. There was no pending motion to modify the underlying dissolution judgment.

Mother has appealed from the trial court's post-judgment order, arguing that ORS 107.425 did not authorize the court to appoint counsel for the children under these circumstances and, alternatively, that the court erred in not holding a hearing before making the appointment. We begin with the text of ORS 107.425,[2] which provided before its 1999 amendment:

"(1)  Whenever a domestic relations suit * * * is filed, or whenever a habeas corpus proceeding or motion to modify an existing decree in a domestic relations suit is before the court, the court having jurisdiction may, in cases in which there are minor children involved, cause an investigation to be made as to the character, family relations, past conduct, earning ability and financial worth of the parties to the suit for the purpose of protecting the children's future interests. * * *

"(2)  The court, on its own motion or on the motion of either party, may order an independent physical, psychological, psychiatric or mental health examination of either party or the children and may require either or both parties and the children to appear and to testify as witnesses during this investigation and to be interviewed, evaluated and tested by an expert. * * *

___

[2] The trial court expressly based the appointment on ORS 107.425. The parties have not argued that any other statute authorized the court to appoint counsel for the children.

"(3)  The court, on its own motion or the motion of either party, may appoint counsel for the children. However, if requested to do so by one or more of the children, the court shall appoint counsel for the child or children. A reasonable fee for an attorney so appointed may be charged against either or both of the parties or as a cost in the proceedings[.] * * *

"(4)  Prior to entry of an order, the court on its own motion or upon the motion of a party may take testimony from or confer with the child or children of the marriage and may exclude from the conference the parents and other persons if the court finds that such action would be likely to be in the best interests of the child or children.* * *"

Mother, father, and the children all have filed briefs on appeal, and all three parties offer different interpretations of the statute. Broadly stated, their arguments raise two issues. The first issue is whether subsection (3) can be read in isolation and apart from the introductory language in subsection (1), which would otherwise limit the instances in which a trial court can appoint counsel. If the introductory language in subsection (1) limits the court's authority to appoint counsel under subsection (3), the second issue is whether a trial court can appoint counsel at any time after a domestic relations action has been filed, even if a dissolution judgment has been entered and no motion to modify is pending before the court.

More specifically, the children argue that the subsections of the statute are not "interdependent" and that subsection (3) authorizes a court to appoint attorneys for minor children at any time and regardless of the potentially limiting language in subsection (1). Mother responds that subsection (3) cannot be read independently of subsection (1) and that the introductory language in subsection (1) limits the court's appointment authority to three situations, each of which contemplates that some proceeding is presently before the court. Father agrees that subsection (3) must be read in light of the rest of the statute, including subsection (1), but maintains that subsection (1) allows an appointment any time after a domestic relations action has been filed, without regard to whether the action has been resolved by a judgment or

whether any proceeding, such as a motion to modify, is currently before the court.

We begin with the children's argument. Viewed in isolation, subsection (3) appears to give courts unlimited appointment authority. Subsection (1), on the other hand, is expressly limited to three situations: when a domestic relations action is filed, when a habeas corpus proceeding is before the court, and when a motion to modify an existing dissolution judgment is before the court. The question becomes whether those limits have any effect on subsection (3) or whether subsection (3) constitutes an unlimited grant of authority to appoint counsel for children.

When construing a statute, our first, and often only, task is to examine its text and context in order to ascertain the legislature's intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). The context of a statute "includes other provisions of the same statute[.]" *Id.* Applying that methodology, we conclude that the legislature intended ORS 107.425 to be read as a whole, as opposed to reading each subsection in isolation. The statute's use of the word "party" or "parties" in subsection (3) is unclear unless one looks to the other subsections of the statute. By itself, the term "party" leaves unanswered the question, "Party to what?" *See Webster's Third New Int'l Dictionary*, 1648 (unabridged ed 1993) (defining party as "one * * * constituting alone or with others one of the two sides in a proceeding"). The answer is easily found by looking above to subsection (1) and reading the statute in its entirety. Similarly, subsection (3) contains the phrase "as a cost of the proceeding," suggesting the sort of ongoing court proceedings that subsection (1) specifically enumerates. Finally, we note that the reference in subsection (3) to "the children," suggests that the term children is qualified in some other part of the statute—*i.e.*, the reference to minor children in subsection (1)—further indicating that the statute was intended to be read as a whole. *See Osborn v. PSRB*, 325 Or 135, 142-43, 934 P2d 391 (1997) (statute's use of the definite article "the" indicates legislature's intent to refer to a previous part of the statute). In sum, subsection (3) is too incomplete standing on its own and raises too many questions that are naturally answered by the

rest of the statute for us to conclude that it was intended to be read independently of the other subsections.

Were the children's reading correct, ORS 107.425(3) would be a limitless grant of authority to appoint counsel for a child at any time—even upon the court's own motion—and to impose the costs on the child's parents. Under that interpretation, because subsection (3) is not limited, on its face, to minor children, a court would be free to appoint attorneys for adult children and then require their parents to shoulder the cost, possibly in instances where no domestic relations proceeding had ever been filed. We do not think that the legislature intended to grant such unlimited authority in light of the rest of the statute's more limited textual focus.[3]

An earlier version of the same statute confirms that interpretation. *See Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996) (stating that prior enactments of a statute are part of a statute's context). The former version of ORS 107.425 provided in its entirety:

"(1) Whenever a domestic relations suit is filed, or whenever a habeas corpus proceeding or motion to modify an existing decree in a domestic relations suit is before the court, the court having jurisdiction may, in cases in which there are minor children involved, cause an investigation to be made as to the character, family relations, past conduct, earning ability and financial worth of the parties to the suit for the purpose of protecting the children's future interest. The court may defer the entry of a final decree until the court is satisfied that its decree in such suit will properly protect the welfare of such children. The investigative findings shall be offered as and subject to all rules of evidence.

"(2) The court, on its own motion, may:

"(a) Cite either party to the suit to appear and testify as witness during this investigation; and

---

[3] We have previously held that we will not ignore a statute's plain text simply because it would "yield an absurd or unreasonable result." *Young v. State of Oregon*, 161 Or App 32, 37-40, 983 P2d 1044, *rev den* 329 Or 447 (1999). We do not depart from that principle here. We simply note that the children's far-reaching interpretation of ORS 107.425(3) is at odds with the text and context of the rest of the statute.

> "(b)    Appoint counsel for the children. A reasonable fee
> for an attorney so appointed may be charged against either
> or both of the parties or as a cost in the proceedings."

Or Laws 1971, ch 280, § 3. In the 1971 version of the statute, the authority to appoint counsel for the children was contained in paragraph (2)(b) and was limited to the proceedings listed in subsection (1). The reference in paragraph (2)(a) to "during this investigation" indicates that subsection (2) was not to be read independently of subsection (1), and we doubt that paragraph (2)(b) was intended to stand on its own if the other paragraph in subsection (2) was not. The parties have brought nothing to our attention suggesting that the legislature intended to expand the court's appointment authority by means of later amendments that did little more than renumber the statute.

We turn to father's proposed interpretation of the statute. Father does not dispute that subsection (3) must be read in light of subsection (1) and that a court's authority to appoint counsel for the children is limited to some extent. However, he argues that the phrase in subsection (1), "whenever a domestic relations suit * * * is filed," allows a court to appoint counsel for children at any time after such an action is filed, even when, as is the case here, a judgment has been entered and no other matter is presently before the court.[4]

ORS 107.425(1) expressly limits the statute's application to three instances: (1) whenever a domestic relations action is filed; (2) whenever a habeas corpus proceeding is before the court; and (3) whenever a motion to modify an existing judgment is before the court. Father's interpretation of the first of the three instances would effectively read at least the third instance out of the statute. If, as father argues, a court's authority to appoint an attorney for the children not only starts when a domestic relations action has been filed but continues after a judgment resolving that action has been entered, there would have been no need for the legislature to specify that a court may also appoint an attorney when a

---

[1] Father also suggests that mother's failure to appeal from the January 1996 order appointing Svetkey as Christopher's attorney somehow bars her from challenging the later, separate 1998 order, at least as to Christopher. Father does not explain the legal theory that underlies that suggestion, nor is one apparent.

motion to modify an existing dissolution judgment is before the court. Father's interpretation would render a portion of the statute surplusage, an approach we are not inclined to follow. *See International Brotherhood v. Oregon Steel Mills, Inc.*, 168 Or App 101, 106, 5 P3d 1122 (2000); ORS 174.010 (indicating a preference to give effect to all statutory provisions).

We do not accept father's argument that ORS 107.425(3) authorizes the appointment of counsel regardless of the length of time that has passed since the conclusion of the action. We hold that a court's authority under ORS 107.425(3) to appoint counsel for children is instead limited to instances where a domestic relations action has been filed and is pending before the court, a habeas corpus proceeding is before the court, or a motion to modify an existing dissolution judgment is before the court.[5] Because none of those proceedings was pending before the trial court at the time of the appointment, ORS 107.425 did not authorize the court to appoint Svetkey as the children's attorney.[6]

Reversed.

---

[5] Father has not argued that any other statute authorized the court to appoint an attorney for the children in these circumstances, and we express no opinion whether some other source of authority exists that would support the trial court's order. We also note that, because we conclude that ORS 107.425(3) did not authorize the appointment, we need not decide whether the court erred in denying mother's request for a hearing before it appointed an attorney for the children.

[6] The Juvenile Rights Project has filed an *amicus curiae* brief in which it argues that "[d]ue process demands independent counsel for children in custody decisions." No party, however, has raised that constitutional issue and the record is inadequate to resolve the issue that *amicus* raises for the first time on appeal. Even if we could consider the issue as an alternative basis for affirming the trial court's order, we decline to do so in this posture.