2008 UT App 146

**Troy FORSBERG, et al., Plaintiffs and Appellants,**

v.

**BOVIS LEND LEASE, INC.; Travelers Casualty and Surety Company of America; Davis Hospital and Medical Center, Inc.; and Davis Hospital and Medical Center, LP, Defendants and Appellees.**

**No. 20070338–CA.**

Court of Appeals of Utah.

April 24, 2008.

Kenneth B. Grimes Jr. and Richard W. Perkins, Salt Lake City, for Appellants.

Robert R. Harrison, Brian J. Babcock, and Jason H. Robinson, Salt Lake City; and Cecil R. Hedger, South Jordan, for Appellees.

Before GREENWOOD, P.J., BENCH and McHUGH, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Appellants (the Funds)[1] appeal the trial court's grant of partial summary judgment to Appellees Davis Hospital and Medi-

cal Center, Inc. and Davis Hospital and Medical Center, LP (collectively the Hospital) and Bovis Lend Lease, Inc. (Bovis), and its denial of the Funds' motion for partial summary judgment. We reverse.

## BACKGROUND

¶ 2 The Hospital contracted with a general contractor, Bovis, to expand the Hospital's building (the Project). The Hospital owned the real property upon which the Project was built (the Property) during the time period relevant to this appeal. Bovis contracted with a subcontractor, Western States Electric, Inc. (WSE), for the Project's electrical work. The Hospital, Bovis, and Travelers Casualty and Surety Company of America (Travelers)—the surety of the bond to release the Funds' mechanics' lien—are collectively referred to as "Appellees."

¶ 3 WSE executed a collective bargaining agreement, which required it to make trust fund contributions and pay wage assessments for its employees. WSE was historically late on making its contributions. Therefore, the NECA Funds, some of the ERISA Trust Funds, and the Union Plaintiffs filed a lawsuit (the ERISA lawsuit) in the United States District Court for the District of Utah under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (2000), seeking payment of the delinquent contributions through June 2002. After the plaintiffs in the ERISA lawsuit obtained a judgment against WSE, the federal district court issued a Garnishee Order, requiring Bovis to retain $49,024.09 from WSE's earnings on the Project. This amount was credited against the most delinquent contributions.

¶ 4 Despite the fact that WSE was continually late in making its trust fund contributions, the Union continued to dispatch its members to work on the Project for WSE. In addition, the Union failed to obtain a surety bond from WSE, as required by the collective bargaining agreement. WSE union employees worked on the Project from about

1. Appellants are organized into three categories: (1) the ERISA Trust Funds; (2) Local Union 354 and the COPE Fund (collectively the Union Plaintiffs); and (3) the Administration Fee Fund and NECA Service Charge (collectively the NECA Funds). All three groups are collectively referred to as "the Funds."

February 4, 2002, until July 20, 2003,[2] and their hourly wages were fully paid. However, WSE failed to pay the trust fund contributions or wage assessments (collectively Fringe Benefits).

¶ 5 In July 2003, WSE filed for bankruptcy and the Funds filed a mechanics' lien against the Property. Bovis and its surety, Travelers, then executed a bond to release the lien. The Funds, along with the individual plaintiffs,[3] next filed a lawsuit to recover the delinquent Fringe Benefits by foreclosing the mechanics' lien and collecting under the contractors' private payment bond statute (private bond statute). After the parties filed cross motions for summary judgment, the trial court concluded that the Funds did not have standing, that Fringe Benefits were not recoverable under either statute, and that both causes of action were preempted by ERISA. The Funds now bring this interlocutory appeal.

## ISSUES AND STANDARD OF REVIEW

¶ 6 The Funds first argue that the trial court erred when it granted Appellees' motion for partial summary judgment and denied the Funds' cross motion on the ground that the Funds did not have standing to foreclose a mechanics' lien or to assert a claim under Utah's private bond statute. The Funds' second argument is that the trial court erred in its conclusion that their claims were preempted by ERISA. Finally, the Funds contend that Fringe Benefits are the proper subject of a mechanics' lien and recoverable under the bond.

¶ 7 This court "reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and

2. There is a factual dispute about the exact dates on which the individual plaintiffs completed work on the Project.

3. The claims of the individual trust beneficiaries who did not fully receive their Fringe Benefits from WSE have been stayed in the trial court pending this appeal.

4. The legislature last amended section 38–1–3 in 1994. *See* Mechanics' Lien and Bonding Amendments, ch. 308, sec. 3, § 38–1–3, 1994 Utah Laws 1448, 1449. For convenience, we cite to the 1994 version codified in the 2005 replacement

views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). Each issue raised by the Funds involves a question of law, and we therefore review them both for correctness.

## ANALYSIS

### I. Standing

¶ 8 Appellees challenge the Funds' standing to assert claims under the Utah mechanics' lien statute,[4] *see* Utah Code Ann. § 38–1–3 (2005), and the Utah private bond statute,[5] *see* Utah Code Ann. § 14–2–2 (2005). Specifically, Appellees argue the Funds do not have standing to avail themselves of the benefits of these statutes "because they did not [personally] supply any labor or materials to the Project." This is an issue of first impression in Utah, and we address it first because it implicates our subject matter jurisdiction. "[S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties. Under the traditional test for standing, the interests of the parties must be adverse and the parties seeking relief must have a legally protectible interest in the controversy." *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 (alteration in original) (citations and internal quotation marks omitted) (holding that common law doctrine of in loco parentis does not give a former domestic partner standing to assert visitation rights after the parent-like relationship has terminated); *see also Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) ("[T]he moving party must have standing to invoke the jurisdiction of the court.").

volume of the Utah Code. *See* Utah Code Ann. § 38–1–3 (2005).

5. The legislature last amended section 14–2–2 in 2004, which amendment was effective as of May 3, 2004. *See* Construction Bond Amendments, ch. 111, sec. 2, § 14–2–2, 2004 Utah Laws 511, 512. The Funds filed their action on September 17, 2004. Therefore, we cite to the 2004 version of the statute, which is codified in the 2005 replacement volume of the Utah Code. *See* Utah Code Ann. § 14–2–2 (2005).

■ ¶ 9 The Utah mechanics' lien and private bond statutes set forth the classes of persons who may avail themselves of their protections. *See* Utah Code Ann. §§ 38–1–3, 14–2–2. Where the right at issue is one created by statute, "the law creating that right can also prescribe the conditions of its enforcement." *State Farm Mut. Auto. Ins. Co. v. Clyde*, 920 P.2d 1183, 1185 (Utah 1996) (holding grandparents of unborn child were not entitled to bring wrongful death action where statute limited claim to a "parent" or "guardian"). Standing to assert rights created by statute requires that the plaintiff be within the "zone of interest contemplated by [the statute]" and have suffered a distinct and palpable injury. *See Ball v. Public Serv. Comm'n*, 2007 UT 79, ¶¶ 61–62, 175 P.3d 545.

¶ 10 The question before this court with regard to standing is whether the Funds are within the zone of interest contemplated by the legislature.[6] To answer that question, we first look to the language of the statutes themselves. *See Clyde*, 920 P.2d at 1186 (stating that, in construing the statute to determine whether grandparents could maintain an action, the "primary objective is to give effect to the legislature's intent" by looking first at "the plain language of the statute"). Our mechanics' lien statute provides, in relevant part:

> Contractors, subcontractors, and *all other persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner* ... shall have a lien upon the property ... for the value of the service rendered, labor performed, or materials or equipment furnished or rented by each respectively, whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise.... This lien shall attach only to such interest as the owner may have in the property.

Utah Code Ann. § 38–1–3 (emphasis added).

¶ 11 The private bond statute allows a cause of action against the bond if one is obtained, *see* Utah Code Ann. § 14–2–1(4) (2005), and directly against the owner if no bond has been purchased, *see id.* § 14–2–2. Although the briefs on appeal did not indicate which section would be applicable, Appellees agreed at oral argument that the Hospital did not obtain a payment bond. Thus, because a bond was not obtained, section 14–2–2 is applicable. That section provides:

> An owner who fails to obtain a payment bond required under Section 14–2–1 is liable *to each person who performed labor or service* or supplied equipment or materials under the commercial contract for the reasonable value of the labor or service performed or the equipment or materials furnished up to but not exceeding the commercial contract price.

*Id.* (emphasis added).

■ ¶ 12 Although the language in the two statutes is not identical, each limits its application to persons who actually performed labor or services, or furnished equipment or materials to the Project. There is no dispute that the beneficiaries who actually performed labor on the Project qualify as persons entitled to file a mechanics' lien against the Property or assert a private bond claim against the Hospital. The parties disagree, however, over whether the Funds, acting on behalf of those beneficiaries, can bring a mechanics' lien foreclosure action or a claim under the private bond statute. We hold that they can.

¶ 13 In the absence of state guidance on this issue, we find the reasoning of the United States Supreme Court on a related question helpful. In *United States v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), the trustee of an employee benefits trust fund brought an action against the surety on a contractor's payment bond under the federal Miller Act. *See id.* at 212–13, 77 S.Ct. 793. Although the contractor had paid the wages due, it had not paid the fringe benefits directly to the trust as agreed under a master labor agreement. *See id.* at 211–13, 77 S.Ct.

---

**6.** Both Appellees and the Funds agree that WSE failed to make some of the Fringe Benefit payments related to labor performed on the Project. Consequently, the Funds have a distinct and palpable injury as they did not receive the payments as promised.

793. The trial court and the Ninth Circuit held that the trustee did not have standing under the Miller Act because it had not directly provided any labor or services to the project.[7] *See id.* at 215, 77 S.Ct. 793. The Supreme Court disagreed, stating:

> If the assignee of an employee can sue on the bond, the trustees of the employees' fund should be able to do so.[8] Whether the trustees of the fund are, in a technical sense, assignees of the employees' rights to the contributions need not be decided. *Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment.* The master labor agreements not only created Carter's obligation to make the specified contributions, but simultaneously created the right of the trustees to collect those contributions on behalf of the employees. The trust agreement gave the trustees the exclusive right to enforce payment. *The trustees stand in the shoes of the employees and are entitled to enforce their rights.*

*Id.* at 219–20, 77 S.Ct. 793 (emphasis added); *see also, e.g., Hawaii Carpenters' Trust Funds v. Aloe Dev. Corp.*, 63 Haw. 566, 633 P.2d 1106, 1112–13 (1981) (holding that trustees of employee benefit funds could bring a mechanics' lien action on behalf of beneficiaries); *Dobbs v. Knudson, Inc.*, 292 N.W.2d 692, 696 (Iowa 1980) (same re: contract bond claims); *National Elec. Indus. Fund v. Bethlehem Steel Corp.*, 296 Md. 541, 463 A.2d 858, 864–65 (Ct.Spec.App.1983) (same re: mechanics' lien); *Omaha Constr. Indus. Pension Plan v. Children's Hosp.*, 11 Neb.App. 35, 642 N.W.2d 849, 853–55 (2002) (same). *But see Ridge Erection Co. v. Mountain States Tel. & Tel. Co.*, 37 Colo.App. 477, 549 P.2d 408, 410–12 (1976) (holding that trustees are not persons entitled to bring a mechan-ics' lien claim, but noting Colorado's unique statute and subsequent amendment that expressly included trustees); *Edwards v. Bethlehem Steel Corp.*, 517 N.E.2d 430, 432 (Ind. Ct.App.1988) (holding that trustees are not persons entitled to bring a mechanics' lien claim).

¶ 14 As in *Carter*, the Funds here stand in the shoes of the laborers and are entitled to enforce their rights. The trust agreements anticipate that the Funds will be responsible for collecting any unpaid Fringe Benefits. For example, the Trust Agreement Governing the Eighth District Electrical Pension Trust provides:

> The Trustees shall have the authority to originate and maintain any legal actions or claims involving potential legal actions, at the expense of the Trust, as they may deem necessary in the administration of the Trust and the benefit plan(s). All such actions and claims shall be prosecuted in the name of the Trust or in the name of the *assignee.* . . .
>
>     . . . .
>
> Whenever a participating employer is delinquent, the *Trustees shall have the authority to take all reasonable steps necessary as appropriate to redress the delinquency, including the filing of claims and liens* . . . .

As in *Carter*, these agreements give the Funds the authority to take legal action on behalf of the employees to collect unpaid contributions. *See* 353 U.S. at 220, 77 S.Ct. 793. Thus, the Funds "have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account," but for the "sole benefit of the beneficiaries." *Id.*

¶ 15 Appellees argue that *Carter* is not controlling for two reasons. First, they contend that the owner in *Carter* signed the

---

**7.** The Miller Act identified those who may sue on a payment bond as " '[e]very person who has furnished labor or material in the prosecution of the work provided for in such contract.' " *United States v. Carter*, 353 U.S. 210, 211 n. 1, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957) (quoting Miller Act § 2(a), 40 U.S.C. § 270b(a) (currently codified as amended at 40 U.S.C. § 3133(b)(1) (Supp. V 2005))).

**8.** A mechanics' lien in Utah "shall be assignable as other choses in action, and the assignee may commence and prosecute actions thereon in his own name in the manner ... provided" under the statute. Utah Code Ann. § 38–1–26 (2005); *see also J.F. Tolton Inv. Co. v. Maryland Cas. Co.*, 77 Utah 226, 293 P. 611, 613–14 (1930) (recognizing the validity of an assignment of a claim against a contractor bond).

master lease agreements creating the fringe benefit obligations, while only WSE entered into the contracts requiring those payments here. Second, Appellees assert that the appearance of the individual beneficiaries as plaintiffs negates the existence of an assignment because a valid assignment would leave them with no claim to pursue in the lawsuit. We reject both arguments.

¶ 16 Our research reveals that all of the jurisdictions that have considered the matter agree that an owner need not itself have agreed to the fringe benefit payments to be subject to lien or bond claims seeking to recover unpaid fringe benefit contributions, and Appellees have not pointed us to any decisions which hold the contrary. *See, e.g., Bellemead Dev. Corp. v. New Jersey State Council of Carpenters Benefit Funds,* 11 F.Supp.2d 500, 516–17 & n. 25 (D.N.J.1998) (holding that ERISA trustees and union can assert lien claims against property on behalf of beneficiaries despite fact that owner was not a party to the contracts creating the fringe benefit obligations); *Performance Funding, LLC v. Arizona Pipe Trade Trust Funds,* 203 Ariz. 21, 49 P.3d 293, 297–98 (Ct.App.2002) (same); *Connecticut Carpenters Benefit Funds v. Burkhard Hotel Partners II, LLC,* 83 Conn.App. 352, 849 A.2d 922, 924, 927–28 (2004) (same); *Hawai'i Laborers' Trust Funds v. Maui Prince Hotel,* 81 Hawai'i 487, 918 P.2d 1143, 1146, 1153 (1996) (same); *Divane v. Smith,* 332 Ill. App.3d 548, 266 Ill.Dec. 255, 774 N.E.2d 361, 363, 368 (2002) (same re: contractors' bond); *Omaha Constr. Indus. Pension Plan,* 642 N.W.2d at 854–55 (same re: mechanics' lien); *see also Ragan v. Tri–County Excavating, Inc.,* 62 F.3d 501, 511 (3d Cir.1995) (holding that union could bring an action as a third-party beneficiary of the contract bond); *International Bhd. of Elec. Workers v. Oregon Steel Mills, Inc.,*[9] 5 P.3d 1122, 1125–26 (Or. Ct.App.2000) (holding that trustees of employee benefit fund had standing under the state's lien law, but union did not).

¶ 17 We agree with these jurisdictions. Neither the mechanics' lien statute nor the private bond statute requires that the owner, or general contractor posting the bond, be a party to the subcontract agreement pursuant to which the labor or material was provided. *See* Utah Code Ann. §§ 38–1–3, 14–2–2 (2005). Likewise, the decisions under those statutes have never required contractual privity between the laborers and the owner or general contractor. *See Cox Rock Prods. v. Walker Pipeline Constr.,* 754 P.2d 672, 673 (Utah Ct.App.1988) ("Ordinarily, one who is not in 'privity' with another cannot sue that party to recover on a contract. However, to protect construction suppliers and subcontractors from the harshness of that doctrine, two principal devices have been created—the mechanic's lien and the payment bond." (citation omitted)).

¶ 18 The Appellees also argue that *Carter* is distinguishable because there is no proof of an actual assignment here that divested the individuals of their claims. Again, we disagree. We first note that *Carter* does not hold that there was a formal assignment of the claims. Rather, the Supreme Court held that particular issue "need not be decided" because "the trustees' relationship to the employees ... is *closely analogous* to that of an assignment." *United States v. Carter,* 353 U.S. 210, 219–20, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957) (emphasis added); *see also Hawaii Carpenters' Trust Funds v. Aloe Dev. Corp.,* 63 Haw. 566, 633 P.2d 1106, 1113 (1981) (affirming trial court's refusal to dismiss ERISA trustee's mechanics' lien claim for unpaid fringe benefits, without deciding "whether the Trustees are, in a technical sense, assignees of the beneficiaries"). While we agree with Appellees that both the Funds and the beneficiaries cannot recover the same unpaid Fringe Benefits, the inclusion of those individuals as plaintiffs is not fatal to the Funds' claims, particularly where the standing of the trustees had not yet been established in Utah.

¶ 19 Based on the foregoing, we hold that the Funds have standing to assert mechanics' lien and private bond claims on behalf of

---

**9.** Appellees have challenged the standing of the Funds as a group, rather than making legal arguments which differentiate among them. Consequently, the arguments made in *International*

*Brotherhood of Electrical Workers v. Oregon Steel Mills, Inc.,* 168 Or.App. 101, 5 P.3d 1122, 1126 (2000), relating specifically to union plaintiffs, are not before us on appeal.

their beneficiaries who performed labor on the Project.

## II. Preemption

¶ 20 We next consider whether the bond and mechanics' lien claims are permissible in light of the preemption language contained in ERISA.[10] The Funds argue that "[t]here is no evidence that Congress intended to supersede state mechanics' lien statutes or [private] bond statutes when it enacted ERISA, or that such statutes conflict with any provision of ERISA." Therefore, they argue, without "such evidence, ERISA is presumed not to preempt [their claims]." In contrast, Appellees contend that the ERISA preemption clause is intended to be interpreted broadly. Their assertion is primarily based on the argument that the Funds' claims are impermissible " 'alternative cause[s] of action to employees to collect benefits protected by ERISA.' " *See Airparts Co. v. Custom Benefit Servs. of Austin, Inc.,* 28 F.3d 1062, 1065 (10th Cir.1994) (quoting *Monarch Cement Co. v. Lone Star Indus., Inc.,* 982 F.2d 1448, 1452 (10th Cir.1992)).

¶ 21 Whether ERISA preempts "a certain state action ... is [a question] of congressional intent." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137–38, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (internal quotation marks omitted). Such intent is determined by reviewing the statutory language and structure, as well as the purpose of ERISA. *See id.* at 138, 111 S.Ct. 478. Therefore, we first examine the precise language used by Congress. Section 514 states:

> Except as provided in subsection (b) of this section,[11] the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (2000) (emphasis added). ERISA defines "any and all State laws," *id.,* as "all laws, decisions, rules, regulations, or other State action having the effect of law," *id.* § 1144(c)(1).

¶ 22 After the passage of ERISA, the courts were left the task of defining the scope of the preemption clause. In *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the United States Supreme Court explained that the preemption provisions of ERISA are deliberately expansive to assure that pension plan regulation is an exclusively federal concern. *See id.* at 523, 101 S.Ct. 1895. Shortly thereafter, in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the high court defined the "relate to" language of ERISA as preempting any law that has "a connection with or reference to [an employee benefit plan]." *Id.* at 96–97, 103 S.Ct. 2890; *see also Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), *overruled in part on other grounds by Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003). While laws that contain an express "reference to" ERISA plans are preempted routinely, the Supreme Court "emphasized that the preemption clause is not limited to 'state laws specifically designed to affect employee benefit plans.' " *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting *Shaw,* 463 U.S. at 98, 103 S.Ct. 2890), *overruled in part on other grounds by Kentucky Ass'n of Health Plans,* 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468. Indeed, a state law may run afoul of the preemption clause even if the law is "consistent with ERISA's substantive requirements." *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. 2380 (citing *Shaw,* 463 U.S. at 98–99, 103 S.Ct. 2890). Because the laws at issue here do not expressly refer to ERISA plans, we consider only whether they have a connection with the such plans.

**10.** ERISA's preemption clause, enacted as section 514, is codified in 29 U.S.C. § 1144. We will refer to this clause in the text as "section 514" for convenience.

**11.** There are eight exceptions in section 514(b), none of which apply in this case. *See* 29 U.S.C. § 1144(b) (2000) (excepting, among other things, insurance, banking, and securities regulations; state criminal laws of general application; and orders relating to domestic relations).

¶ 23 Relying on the decisions from the United States Supreme Court, lower courts began applying the preemption provisions of ERISA to various claims alleged to "relate to" employee benefit plans. Most concluded that mechanics' lien and bond claims were preempted. *See, e.g., McCoy v. Massachusetts Inst. of Tech.,* 950 F.2d 13, 16–20 (1st Cir.1991) (lien claim by ERISA trustees preempted); *Sturgis v. Herman Miller, Inc.,* 943 F.2d 1127, 1130 (9th Cir.1991) (same), *overruled in part by Southern Cal. IBEW–NECA Trust Funds v. Standard Indus. Elec. Co.,* 247 F.3d 920 (9th Cir.2001); *Iron Workers Mid–S. Pension Fund v. Terotechnology Corp.,* 891 F.2d 548, 552–56 (5th Cir.) (same), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990); *Carpenters S. Cal. Admin. Corp. v. El Capitan Dev. Co.,* 53 Cal.3d 1041, 282 Cal.Rptr. 277, 811 P.2d 296, 298–303 (same), *cert. denied,* 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991); *Chestnut–Adams Ltd. P'ship v. Bricklayers & Masons Trust Funds of Boston,* 415 Mass. 87, 612 N.E.2d 236, 241 (1993) (same); *Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co.,* 123 Wash.2d 565, 870 P.2d 960, 964 (1994) (same). *But see Plumber's Local 458 Holiday Vacation Fund v. Howard Immel, Inc.,* 151 Wis.2d 233, 445 N.W.2d 43, 46 (Ct.App.1989) (lien claim by ERISA trustees not preempted).

¶ 24 Interestingly, most of these cases were interpreting statutes that expressly "referred to" trust funds. *See, e.g., McCoy,* 950 F.2d at 15–16 (interpreting Mass. Gen. Laws ch. 254, § 4 (1990), which expressly referenced "trustee or trustees of any fund or funds ... providing coverage or benefits"); *Sturgis,* 943 F.2d at 1129 & n. 1 (interpreting Cal. Civ.Code § 3111 (West 1974), which expressly granted lien rights to "an express trust fund established pursuant to a collective bargaining agreement to which payments are required to be made on account of fringe benefits"); *Iron Workers,* 891 F.2d at 555 n. 7 (interpreting La.Rev.Stat. Ann. § 9:4803(A)(3) (West 1983), which expressly

granted lien rights for "[a]mounts owed under collective bargaining agreements with respect to a laborer's or employee's wages or other compensation ... and other fringe benefits"); *El Capitan,* 282 Cal.Rptr. 277, 811 P.2d at 297 n. 1 (interpreting Cal. Civ.Code § 3111, which expressly created a lien right for "an express trust fund established pursuant to a collective bargaining agreement to which payments are required to be made on account of fringe benefits"); *Chestnut–Adams,* 612 N.E.2d at 238 n. 4 (interpreting Mass. Gen. Laws ch. 254, § 4 (1990), which expressly states that "[s]uch notice may also be filed by the trustee or trustees of a fund or funds ... providing coverage or benefits to any person performing labor").[12]

¶ 25 Over time, the United States Supreme Court began to retreat from its expansive application of the ERISA preemption clause. In *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court highlighted the differences between laws that specifically refer to ERISA plans and laws of general application. The Court held that a Georgia statute which expressly referenced ERISA plans was preempted. *See id.* at 828, 108 S.Ct. 2182 (quoting Ga.Code Ann. § 18–4–22.1 (1982) (barring the garnishment of "funds or benefits of [an] ... employee benefit plan or program subject to ... [ERISA]")). The majority explained: "[W]e have virtually taken it for granted that state laws which are specifically designed to affect employee benefit plans are pre-empted under § 514(a)." *Id.* at 829, 108 S.Ct. 2182 (internal quotation marks omitted). In contrast, the Court also held that a judgment creditor could garnish a debtor's ERISA benefits under Georgia's general garnishment laws. *See id.* at 832, 108 S.Ct. 2182. In reaching that conclusion, the Court relied on the fact that "ERISA does not provide an enforcement mechanism for collecting judgments," *id.* at 833, 108 S.Ct. 2182, and that without use of the general state garnishment procedures, "there would be no way to enforce such a

---

12. Only *Puget Sound Electrical Workers Health & Welfare Trust Fund v. Merit Co.,* 123 Wash.2d 565, 870 P.2d 960 (1994), has held that a mechanics' lien statute of general application was preempted by ERISA. *See id.* at 963–64. The

parties failed to cite—and our own research did not reveal—any other case decided before 1995 holding that ERISA preempts a generally applicable mechanics' lien or bond statute that does not refer to trust funds.

judgment won against an ERISA plan," *id.* at 834, 108 S.Ct. 2182.

¶ 26 In *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the United States Supreme Court held that a wrongful termination claim—based on the allegation that the discharge was motivated by an intent to prevent the plaintiff from vesting in the company ERISA plan—was preempted by section 514(a). *See id.* at 135, 140, 145, 111 S.Ct. 478. The Supreme Court concluded that "the Texas cause of action purports to provide a remedy for the violation of a right expressly guaranteed by § 510 and exclusively enforced by § 502(a)."[13] *Id.* at 145, 111 S.Ct. 478. The *Ingersoll–Rand* Court, however, reaffirmed the limits on ERISA preemption, noting: "We are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Id.* at 139, 111 S.Ct. 478. Thus, *Ingersoll–Rand* provides support for both of the positions asserted in this appeal. While Appellees contend the lien and bond claims are alternative remedies that should be preempted, the Funds contend that they are laws of general application that function irrespective of ERISA.

¶ 27 Before the impact of these decisions was fully realized in the lower courts, Congress issued a Senate report (the Report) regarding House Bill 1036, a possible amendment to ERISA's preemption exceptions.[14] *See* S.Rep. No. 103–299 (1994). Although the amendment was never formally proposed, it illustrates congressional concern with the developing case law.

¶ 28 A majority of the committee that prepared the Report proposed an amendment "that the act does not preempt State and local laws which ... provide for a mechanics' lien or other lien, bonding, or other security for the collection of delinquent contributions to multiemployer pension, health and welfare plans."[15] *Id.* at 1–2. House Bill 1036 was proposed after some federal and state appellate courts held that ERISA preempted state lien laws.[16] *See id.* at 2–5, 11–12, 16. The Report states that the bill's purpose "is to overturn the discrete segment of court decisions which have preempted those State laws affecting ... mechanics' liens and other enforcement tools for collection of delinquent pension and health and welfare contributions." *Id.* at 3. The majority explained that

---

**13.** The Supreme Court later explained the holding of *Ingersoll–Rand* on the issue of whether a state cause of action provides an alternative remedy: "[W]e have held that state laws providing alternative enforcement mechanisms also relate to ERISA plans, triggering pre-emption." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (citing *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

**14.** Our discussion of the Report is not indicative of Congress's original intent in enacting ERISA's broad preemption clause. *See Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) ("[S]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress. It is a particularly dangerous ground ... when it concerns, as it does here, a proposal that does not become law." (citation and internal quotation marks omitted)). Nevertheless, the Report is helpful to understanding the development of the law on this subject.

**15.** The committee was not unanimous. Ten members supported the amendment and seven opposed it. *See* S.Rep. No. 103–299, at 20 (1994).

**16.** The Report cited *Trustees of the Electrical Workers Health & Welfare Trust v. Marjo Corp.*, 988 F.2d 865 (9th Cir.1992), *overruled in part by Southern Cal. IBEW–NECA Trust Funds v. Standard Indus. Elec. Co.*, 247 F.3d 920 (9th Cir. 2001); *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13 (1st Cir.1991); *Sturgis v. Herman Miller, Inc.*, 943 F.2d 1127 (9th Cir. 1991), *overruled in part by Southern Cal. IBEW–NECA Trust Funds*, 247 F.3d 920; *Bricklayers Local 33 Benefit Funds v. America's Marble Source, Inc.*, 950 F.2d 114 (3d Cir.1991); *Iron Workers Mid–South Pension Fund v. Terotechnology Corp.*, 891 F.2d 548 (5th Cir.), *cert. denied*, 497 U.S. 1024, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990); *Carpenters Southern California Administrative Corp. v. El Capitan Development Co.*, 53 Cal.3d 1041, 282 Cal.Rptr. 277, 811 P.2d 296, *cert. denied*, 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991); *Carpenters Health & Welfare Trust v. Surety Co. of the Pacific*, 13 Cal.App.4th 1406, 18 Cal.Rptr.2d 661 (1993); and *Puget Sound*, 123 Wash.2d 565, 870 P.2d 960, as proof that bond and lien statutes "have been jeopardized by misapplications of ERISA preemption." S.Rep. No. 103–299, at 11–12 & nn. 18–22.

mechanics' lien statutes "are an essential tool used by ... plans in the building and construction industry to collect delinquent, collectively-bargained employer contributions." *Id.* at 11. Finally, the majority reasoned that the proposed amendment was necessary because "State-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA." *Id.* at 14.

¶ 29 The minority disagreed that the amendment was necessary, stating that Congress intended ERISA's preemption clause " 'to apply in its broadest sense to all actions of State or local governments.' " *Id.* at 21 (quoting 120 Cong. Rec. 29,933 (1974) (statement of Sen. Williams)). Furthermore, these dissenters found a specific exemption for mechanics' lien and bond statutes unnecessary because "state mechanics' lien laws or other collection remedies are not preempted by ERISA where they are of general applicability." *Id.* at 30. Thus, although there was disagreement as to whether an amendment to the preemption provisions of ERISA was necessary, all members of the committee agreed that ERISA does not preempt state mechanics' lien laws or other collection remedies of general applicability.

¶ 30 Although no action was taken on the proposed amendment during the 103rd Congress,[17] a year later the United States Supreme Court expressly acknowledged that, although the text of section 514(a) is very broad, "uncritical literalism" provides little help in determining what laws "relate to" or have a "connection with" ERISA plans. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In holding that the challenged surcharge law was not preempted, the *Travelers* Court stressed that any analysis of section 514(a) must begin with a "presumption that Congress does not intend to supplant state law." *Id.* at 654, 115 S.Ct. 1671. This presumption is particularly strong in areas of traditional state regulation:

> Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, *we have worked on the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."*

*Id.* at 655, 115 S.Ct. 1671 (emphasis added) (citation omitted) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). The Court also cautioned against "a theory that all laws with indirect economic effects on ERISA plans are pre-empted under § 514(a)." *Id.* at 664–65, 115 S.Ct. 1671.

¶ 31 The *Travelers* Court explained that "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining [ERISA section 514's] key term, *and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."* *Id.* at 656, 115 S.Ct. 1671 (emphasis added); *accord Harmon City, Inc. v. Nielsen & Senior,* 907 P.2d 1162, 1167–69 (Utah 1995) (discussing the need to look to ERISA's objectives when determining whether ERISA preempts state law). The *Travelers* Court also noted that preemption would be particularly unsettling where the challenged law predated ERISA and "there is not so much as a hint in ERISA's legislative history or anywhere else that Congress intended to

---

**17.** Nonaction by Congress can sometimes be attributed to acquiescence. *See Bob Jones Univ. v. United States,* 461 U.S. 574, 600–01, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) ("Nonaction by Congress is not often a useful guide, but .... failure to act [here] ... provides added support ... that Congress acquiesced in the IRS rulings...."). Where the silence of Congress is ambiguous, however, courts decline to infer a particular congressional intent. *See, e.g., Crosby v. National Foreign Trade Council,* 530 U.S. 363, 388, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); *Pension Benefit Guar. Corp.,* 496 U.S. at 650, 110 S.Ct. 2668. The Senate's failure to pass House Bill 1036 is inconclusive. It could indicate either that Congress was comforted by the Supreme Court's less literalistic approach to preemption announced in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), or it could evidence acquiescence in broad application of the preemption clause. Consequently, we do not rely on Congress's failure to act as evidence of particular legislative intent.

squelch these state efforts."[18] 514 U.S. at 665 115 S.Ct. 1671.

■ ¶ 32 *Travelers* sent a strong message to the lower courts that section 514(a) was subject to significant limitations and that any challenge to a state law of general application affecting an area of traditional state concern must overcome a strong presumption that Congress did not intend to preempt it. In response, most courts after 1995 have held that ERISA does not preempt mechanics' lien laws or contractors' bond statutes of general application. *See, e.g., Southern Cal. IBEW–NECA Trust Funds v. Standard Indus. Elec. Co.*, 247 F.3d 920, 928–29 (9th Cir.2001) (disavowing pre-*Travelers* cases and holding that payment bond and stop notice statutes of general application are not preempted by ERISA); *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 574–75 (2d Cir.1995) (citing *Travelers* and *Ingersoll–Rand* and concluding that the "surety law does not touch upon any rights or duties incident to the ERISA plan itself, nor does it conflict with any ERISA cause of action"); *Bellemead Dev. Co. v. New Jersey State Council of Carpenters Benefit Funds*, 11 F.Supp.2d 500, 507–08, 516–17 (D.N.J. 1998) (citing *Travelers* and following *Ragan* to hold that ERISA does not preempt construction lien law of general application); *Betancourt v. Storke Hous. Investors*, 31 Cal.4th 1157, 8 Cal.Rptr.3d 259, 82 P.3d 286, 288–96 (2003) (citing *Travelers* and holding that mechanics' lien law of general applica-

tion is not preempted by ERISA); *Hawai'i Laborers' Trust Funds v. Maui Prince Hotel*, 81 Hawai'i 487, 918 P.2d 1143, 1155–56 (1996) (citing Senate Report 299 and holding that mechanics' lien law of general application is not preempted by ERISA). Indeed, in several of the most recent cases, the defendants have not even asserted ERISA preemption. *See, e.g., Connecticut Carpenters Benefit Funds v. Burkhard Hotel Partners II, LLC*, 83 Conn.App. 352, 849 A.2d 922, 927–28 (2004) (joining the "majority of jurisdictions that have addressed the issue" by holding that ERISA trustees had standing to file mechanics' lien for unpaid fringe benefits) (collecting cases); *Divane v. Smith*, 332 Ill.App.3d 548, 266 Ill.Dec. 255, 774 N.E.2d 361, 368 (2002) (addressing issues of notice and standing); *Omaha Constr. Indus. Pension Plan v. Children's Hosp.*, 11 Neb.App. 35, 642 N.W.2d 849, 853–55 (2002) (addressing defenses other than preemption); *see also, e.g., Ragan v. Tri–County Excavating, Inc.*, 62 F.3d 501, 512 (3d Cir.1995) (holding—without citing *Travelers*—that bond statute of general application is not preempted by ERISA).[19] We agree with these decisions and hold that Utah's mechanics' lien and private bond statutes, which make no references to trust funds or ERISA itself,[20] are not preempted.

¶ 33 Our decision is supported by the Utah Supreme Court's decision in *Harmon City, Inc. v. Nielsen & Senior*, 907 P.2d 1162 (1995), which held that section 514 did not

---

**18.** Utah's mechanics' lien statute predates ERISA, *see* Utah Code Ann. §§ 38–1–1 to –37 (2005 & Supp.2007) (originally enacted as R.S. 1898 & C.L.1907, §§ 1372, 1381, 1382, 1397), and Utah has had some form of its contractors' bond statute since 1909, *see* Utah Code Ann. §§ 14–1–1 to –20 (2005 & Supp.2007) (originally enacted as L.1909, ch. 68, §§ 1, 2 (repealed 1963)) (for public contracts).

**19.** The only post-*Travelers* case we have found that holds ERISA preempts a mechanics' lien statute of general application is *International Brotherhood of Electrical Workers v. Trig Electric Construction Co.*, 142 Wash.2d 431, 13 P.3d 622, 627–28 (2000) (reaffirming *Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co.*, 123 Wash.2d 565, 870 P.2d 960 (1994), and relying, in part, on stare decisis). The dissenting judge in *Trig Electric* strongly disagreed, stating: "In this case, the lien laws are of general appli-

cability. They have only tenuous connections with ERISA plans. Under *Travelers*, such a connection is not enough to overcome the presumption that Congress does not intend to supplant state law." *Id.* at 631 (Johnson, J., dissenting).

**20.** *EklecCo v. Iron Workers Locals*, 170 F.3d 353 (2d Cir.1999), held that a mechanics' lien statute—which expressly included " 'any trust fund to which benefits and wage supplements are due or payable for the benefit of such laborers' "— was preempted by ERISA. *Id.* at 356–57 & n. 2 (quoting N.Y. Lien Law § 3 (McKinney 1993)). *But see International Bhd. of Elec. Workers v. Oregon Steel Mills, Inc.*, 168 Or.App. 101, 5 P.3d 1122, 1127–30 (2000) (holding that ERISA did not preempt lien statute despite express language in Or.Rev.Stat. § 87.010(4) that: "Trustees of an employee benefit plan shall have a lien upon the improvement for the amount of contributions").

preempt a claim by ERISA trustees for attorney malpractice. *See id.* at 1170–71. Although not concerned with preemption of the mechanics' lien or contractors' bond statute, *Harmon City* provides helpful guidance on the scope of ERISA preemption. While recognizing the expansive nature of section 514, our supreme court also noted that ERISA " 'does not require the creation of a fully insulated legal world' that renders all state law preempted whenever there is a plan in the picture." *Id.* at 1168 (quoting *United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp.,* 995 F.2d 1179, 1193–94 (3d Cir.1993)). Indeed, some state laws may affect ERISA " 'in too tenuous, remote, or peripheral a manner' to warrant finding that they 'relate to' a plan." *Id.* (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). "Consequently, a law of general applicability 'that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan' may fall outside ERISA's otherwise broad reach." *Id.* (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)); *see also Egelhoff v. Egelhoff,* 532 U.S. 141, 147–48, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (holding a state law that invalidated beneficiary designation upon divorce was preempted, but distinguishing it from "generally applicable laws regulating areas where ERISA has nothing to say" (internal quotation marks omitted)); *Airparts Co. v. Custom Benefit Servs. of Austin, Inc.,* 28 F.3d 1062, 1065 (10th Cir. 1994) ("Those [state laws] that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental." (quoting *Monarch Cement Co. v. Lone Star Indus., Inc.,* 982 F.2d 1448, 1452 (10th Cir.1992))).

¶ 34 The Utah mechanics' lien and private bond statutes both are of general applicability, make no reference to ERISA, and function irrespective of it. *See* Utah Code Ann. §§ 38–1–3, 14–2–2 (2005). Furthermore, they regulate areas of traditional state concern. *See Hawai'i Laborers',* 918 P.2d at 1157 ("[I]t is within the state's sovereign powers to determine that laborers enjoy su-

perior creditor priority . . . ."); *see also BFP v. Resolution Trust Corp.,* 511 U.S. 531, 544, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) ("It is beyond question that an essential state interest is at issue here: We have said that 'the general welfare of society is involved in the security of the titles to real estate' and the power to ensure that security 'inheres in the very nature of [state] government.' " (alteration in original) (quoting *American Land Co. v. Zeiss,* 219 U.S. 47, 60, 31 S.Ct. 200, 55 L.Ed. 82 (1911))).

¶ 35 Relying on the Tenth Circuit's decision in *Airparts Co. v. Custom Benefit Services of Austin, Inc.,* 28 F.3d 1062 (10th Cir.1994), the Utah Supreme Court identified four types of state laws that have been found to "relate to" ERISA, thereby triggering its preemption clause:

> "First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of administration of the ERISA plan."

*Harmon City,* 907 P.2d at 1169 (quoting *Airparts,* 28 F.3d at 1064–65). The state laws at issue here fit none of these categories. Although they provide remedies to the Funds, those remedies are not for "misconduct growing out of administration of the ERISA plan." *Id.*

■ ¶ 36 Furthermore, the mechanics' lien and private bond claims do not affect "relations among the principal ERISA entities— the employer, the plan, the plan fiduciaries, and the beneficiaries." *See Airparts,* 28 F.3d at 1065. "Ultimately, if there is no effect on the relations among the principal ERISA entities . . . there is no preemption. As a corollary, *actions that affect the relations between one or more of these plan entities and an outside party similarly escape preemption.*" *Id.* (emphasis added) (citation omitted) (citing *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.,* 944 F.2d 752, 756 (10th Cir.1991); *Memorial*

*Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 249 (5th Cir.1990)); *see also Harmon City,* 907 P.2d at 1169 ("[C]ourts 'are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities ... than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.' " (omission in original) (quoting *Memorial Hosp.,* 904 F.2d at 245)).

¶ 37 None of the Appellees is an ERISA entity—they are not the employer, the plan, the plan fiduciaries, or the beneficiaries. *See Airparts,* 28 F.3d at 1065. Likewise, although the collection of Fringe Benefits through a lien or bond claim may indirectly affect "relations among the principal ERISA entities," *id.,* such a broad application of the term "affect" would create the same "uncritical literalism" disapproved in *Travelers. See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("[Having a definition of 'relate to'] still leaves us to question whether the [challenged] laws have a 'connection with' the ERISA plans, and here an uncritical literalism is no more help than in trying to construe 'relate to.' "); *see also Memorial Hosp.,* 904 F.2d at 244 ("A purely semantic approach [to ERISA preemption] cannot be taken to its logical extreme....").

¶ 38 Nevertheless, Appellees argue the claims are preempted because the Funds are essentially "employees resorting to state law to avail themselves of an alternative cause of action to collect benefits." *See Harmon City, Inc. v. Nielsen & Senior,* 907 P.2d 1162, 1170 (1995). We disagree. As explained in *Airparts, see* 28 F.3d at 1065, any ERISA preemption analysis must consider whether the action is between or among ERISA entities or between one or more ERISA entities and an outside party. Because Appellees are each "outside parties," these state claims are not alternatives to the remedies provided by ERISA, which only governs actions between or among ERISA entities. *See* ERISA § 502, 29 U.S.C. § 1132 (2000 & Supp. V 2005). Indeed, "[p]erhaps the most salient consideration is whether the state law in question regulates the terms, duties, or administration of ERISA plans." *Harmon City,* 907 P.2d at 1169. The lien and bond laws challenged here do not.

¶ 39 Finally, Appellees contend that permitting these claims to go forward would be contrary to ERISA's goal of ensuring that "plans and plan sponsors would be subject to a uniform body of benefits law ... [and] to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Again, we disagree. The Utah mechanics' lien and private bond statutes are not "benefits laws"; they are laws of general applicability, operating irrespective of ERISA. Further, the neutral application of those statutes will not subject any ERISA entities to conflicting laws concerning the terms, duties, or administration of ERISA plans. Indeed, ERISA provides no enforcement remedies against non-ERISA entities. *See* 29 U.S.C. § 1132; *see also Plumber's Local 458 Holiday Vacation Fund v. Howard Immel, Inc.,* 151 Wis.2d 233, 445 N.W.2d 43, 46 (Ct.App. 1989) ("While one may readily understand court decisions holding that the collection of ERISA obligations may not be directed by state law, a decision holding that no general creditor's remedies may be utilized to collect judgments held by ERISA-regulated plans would be unfathomable."). Because ERISA contains no competing remedy, the lien and bond claims are not "alternative" remedies to a right provided in the federal act.

¶ 40 Appellees provide nothing that convinces us that the "presumption that Congress does not intend to supplant state law," *see Travelers,* 514 U.S. at 654, 115 S.Ct. 1671, has been rebutted. For all of the reasons discussed above, we hold that the claims asserted by the Funds are not preempted by ERISA.

### III. Fringe Benefits as Compensation

¶ 41 Finally, Appellees argue that even if the Funds have standing and the claims are not preempted, the lien and bond claims were properly dismissed because Fringe

Benefits are not recoverable under either statute. This issue is also one of first impression in Utah.

## A. Utah's Mechanics' Lien Statute

¶ 42 To determine whether Fringe Benefits are recoverable, we examine the plain language of section 38–1–3 of the mechanics' lien statute. Utah's mechanics' lien statute provides for recovery of the "value of the service rendered, [or] labor performed." [21] Utah Code Ann. § 38–1–3 (2005). The parties disagree as to whether this includes Fringe Benefits. Appellees contend that such contributions are not wages and thus not recoverable. In contrast, the Funds argue that "[t]he statute is not limited to wages" and that "[b]y any reasonable definition, the 'value of services rendered' must include the benefit package that provides an integral part of the compensation received by employees for their work." We agree with the Funds. The legislature used the broad term "value," rather than the more narrow word "wages," and it did not enumerate any specific items that may not be included. That fact, in conjunction with the remedial purposes of the statute, convinces us that "the value of the labor" includes Fringe Benefits. [22]

¶ 43 The Utah Supreme Court has previously recognized that "[t]he purpose and intent of Utah's Mechanics' Lien Act manifestly has been to protect, at all hazards, those who perform the labor and furnish the materials which enter into the construction of a building or other improvement." *Sill v. Hart*, 2007 UT 45, ¶ 8, 162 P.3d 1099 (citation and internal quotation marks omitted) (citing Utah Code Ann. §§ 38–1–1 to –29 (2001));

*see also John Wagner Assoc. v. Hercules, Inc.*, 797 P.2d 1123, 1125 (Utah Ct.App.1990) ("When uncertainty exists ... it is appropriate to look to [a statute's] purpose ...." (internal quotation marks omitted)). On the other hand, "[a]lthough liens and pleadings arising under the [mechanics' lien] statute will be liberally construed to effect the desired object, compliance with the statute is required before a party is entitled to the benefits created by the statute." *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 (Utah 1986); *see also First Gen. Servs. v. Perkins*, 918 P.2d 480, 486 (Utah Ct.App.1996) ("Once the narrow requirements of the mechanics' lien statutes have been met, the general policy of Utah courts is to construe the statutes broadly...."). We have already held in Part I that the Funds have standing. Furthermore, there is no dispute that the beneficiaries performed labor on the Project or that the lien was timely. Thus, the "narrow requirements of the [statute] have been met," *see Perkins*, 918 P.2d at 486, and we now broadly construe the statute to effect its remedial purposes. [23]

¶ 44 Appellees argue that the legislature's failure expressly to include Fringe Benefits in section 38–1–3 evidences its intent both to exclude such benefits and to ensure that courts strictly construe section 38–1–3. We disagree with both contentions. [24] Appellees cite *Graco Fishing & Rental Tools, Inc. v. Ironwood Exploration, Inc.*, 766 P.2d 1074 (Utah 1988), *superseded by statute*, Utah Code Ann. §§ 14–2–1, –2 (1985), in support of their argument that the absence of Fringe Benefits from the statute indicates an intent

---

21. The trial court concluded that "[t]he alleged unpaid contributions and assessments are not considered part of the wages of the [beneficiaries]." However, the issue is actually whether such benefits are part of "the value of the service rendered, [or] labor performed." *See* Utah Code Ann. § 38–1–3 (2005).

22. We use the term "labor" to refer to both labor and services. *See* Utah Code Ann. §§ 14–2–2, 38–1–3 (2005).

23. Although the mechanics' lien statute was also enacted to protect a landowner's credit and title, *see Pearson v. Lamb*, 2005 UT App 383, ¶ 8, 121 P.3d 717, landowners "fairly may be charged

with knowledge of the extent" of the work to be performed, *Stanton Transp. Co. v. Davis*, 9 Utah 2d 184, 341 P.2d 207, 210 (1959). Costs that are "customarily simply one of the factors in the over-all delivered cost to the customer" are the proper subject of a mechanics' lien. *Id.* at 211.

24. We likewise disagree with Appellees' claim that the individual beneficiaries are not entitled to a lien for Fringe Benefits because they "are not seeking unpaid wages." As discussed, the issue is whether Fringe Benefits are part of the "value of labor," not whether they are wages. *See supra* note 21.

to exclude them. Their reliance is misplaced. In *Graco,* the Utah Supreme Court held that the private bond statute did not cover unpaid rental fees, stating that a recent amendment allowing such fees implied they were not available under the prior, and applicable, version of the act. *See id.* at 1077–79. In this case, there have been no recent amendments to either the bond or the lien statute relating to nonwage benefits. *See* Utah Code Ann. §§ 14–2–2, 38–1–3 (2005 & Supp.2007).[25] Further, the *Graco* court's analysis was focused on who can recover, rather than what constitutes "the value of" labor or service. Indeed, the *Graco* court held certain costs associated with the rental fees were recoverable despite the fact that they were not "wages." *See Graco,* 766 P.2d at 1077 (repair, inspection, and reasonable transportation charges are lienable). Thus, because we hold that Fringe Benefits are part of the value of the labor or services provided, they are recoverable under section 38–1–3.

¶ 45 We find support for our holding in decisions from other jurisdictions that have addressed this issue—albeit under state statutes somewhat different from Utah's. In *Farley v. Zapata Coal Corp.,* 167 W.Va. 630, 281 S.E.2d 238 (1981), the West Virginia Supreme Court of Appeals held that "'a lien for the value of such work or labor'" included fringe benefits. *Id.* at 241 (quoting W. Va.Code Ann. § 38–2–31 (1966)). The *Farley* Court reasoned that fringe benefits

> are integral components of a compensation package bargained for and agreed upon by the parties.... A factor the employee undoubtedly considers when gauging the fairness of an employment offer is the value of benefits the employer offers in addition to take home pay. Conversely, the employer also takes into account the cost of fringe benefits when determining the salary or hourly wage rate it will offer its prospective employees. *Obviously if fringe bene-*

> *fits such as vacation and sick pay were absent from the compensation package, wages would be higher.*

*Id.* at 242 (emphasis added); *see also Hawaii Carpenters' Trust Funds v. Aloe Dev. Corp.,* 63 Haw. 566, 633 P.2d 1106, 1113 (1981) (concluding that "the 'price agreed to be paid' for the labor ... will not be paid in full unless required trust fund contributions are received" (quoting Haw.Rev.Stat. § 507–42)).

¶ 46 Appellees' reliance on *Ridge Erection Co. v. Mountain States Telephone & Telegraph Co.,* 37 Colo.App. 477, 549 P.2d 408 (1976), does not convince us otherwise. In *Ridge,* the Colorado Court of Appeals concluded that "the language 'value of labor done' is [not] broad enough to include all elements of [a] laborer's compensation," such as fringe benefit contributions. *Id.* at 410–11. However, the court's reasoning relied heavily on the legislature's recent amendment of that very section to expressly include "'the payments required under any labor contract to any trust established for the provision of ... benefits for the use of the employees of any contractors,'" *id.* at 411 (quoting 1975 Colo. Sess. Laws 1422, § 38–22–101(4) (1975)). The *Ridge* court explained that "[w]hen a statute is amended, it is presumed that the legislature intended the statute to have a meaning different from that accorded to it before the amendment." *Id.* Consequently, *Ridge* is easily distinguishable.

■ ¶ 47 Instead, we agree with the reasoning in *Hawaii Carpenters' Trust Funds v. Aloe Dev. Corp.,* 63 Haw. 566, 633 P.2d 1106 (1981), and *Farley.* The value, or price, of labor includes Fringe Benefits, *see id.* at 1109, 1113, and the value of labor encompasses the entire compensation package "contracted to be paid by the employer for the employee[s' labor] regardless of the nature of such compensation," *see Farley,* 281 S.E.2d at 242.[26] Thus, we hold that the Funds can

---

**25.** The mechanics' lien statute was last amended in 1994 to include a reference to and exception for the Residence Lien Restriction and Lien Recovery Fund Act, and the private bond statute was last amended in 2004 to add "commercial" to the term "contract." *See* Mechanics' Lien and Bonding Amendments, ch. 308, sec. 3, § 38–1–3, 1994 Utah Laws 1448, 1449; Construction Bond Amendments, ch. 111, sec. 2, § 14–2–2, 2004

Utah Laws 511, 512; *see also* Utah Code Ann. §§ 38–1–3 (2005), 14–2–2 amend. notes (2005), 38–11–107 (Supp.2007) (restricting liens on owner-occupied residences).

**26.** *See also, e.g., Pipeline Indus. Benefit Fund v. Aetna Cas. & Sur. Ins. Co.,* 503 P.2d 1286, 1288–89 (Okla.Civ.App.1972) (health and welfare benefit contributions are part of the overall labor

assert a claim under the mechanics' lien statute for the unpaid Fringe Benefits.

## B. Utah's Private Bond Statute

¶ 48 Utah courts have also never addressed whether a claim for unpaid Fringe Benefits is recoverable under Utah's private bond statute. *See* Utah Code Ann. §§ 14–2–1, –2, –5 (2005). Section 14–2–2 of Utah's bond statute for private contracts states, in relevant part: "An owner who fails to obtain a payment bond required under Section 14–2–1 is liable to each person who performed labor ... under the commercial contract for the *reasonable value of the labor ... performed* ... up to but not exceeding the commercial contract price." *Id.* § 14–2–2(1) (emphasis added). Additionally, to recover under section 14–2–2, a claimant must file its bond action within a year of her performance. *See id.* § 14–2–2(2). Again, there is no dispute that the beneficiaries performed work covered under the private bond statute. Nor do Appellees argue that the Funds failed to timely file their claim. Thus, the issue on appeal is whether the "reasonable value of the labor ... performed" includes Fringe Benefits.

¶ 49 Like the mechanics' lien statute, Utah's private bond statute " 'should be interpreted and applied in such a manner as to carry out the purpose for which [it] w[as] created.' " *John Wagner Assoc. v. Hercules, Inc.*, 797 P.2d 1123, 1125 (Utah Ct.App.1990) (quoting *King Bros. v. Utah Dry Kiln Co.*, 21 Utah 2d 43, 440 P.2d 17, 18 (1968)). Although the private bond statute's language is slightly different from that of the mechanics' lien statute, *compare* Utah Code Ann. § 14–2–2 ("the reasonable value of the labor"), *with* Utah Code Ann. § 38–1–3 (2005) ("the value of the ... labor"), their objectives—to protect those who supply labor and materials—is the same. *See John Wagner*, 797 P.2d at 1125; *see also Graco*, 766 P.2d at 1078 ("The contractor's [private] bond statute and the mechanic's lien statute have the same purpose and contain similar provisions and language. This Court has established the general rule that [b]ecause of the common purpose of these lien and contractors bond statutes, and their practically identical language, adjudications as to what is lienable under the former are helpful in determining the proper application of the latter." (alteration in original) (internal quotation marks omitted)). Therefore, we construe the private bond statute broadly in light of its protective purpose.[27]

¶ 50 For the same reasons discussed in Part III.A,[28] and in light of the bond and lien

costs and are therefore included as wages); *Mathis v. Thunderbird Vill., Inc.*, 236 Or. 425, 389 P.2d 343, 348 (1964) (contributions to union health and welfare funds are part of the cost of labor); *Timber Structures, Inc. v. C.W.S. Grinding & Mach. Works*, 191 Or. 231, 229 P.2d 623, 631–32 (1951) (cost of casualty insurance and boarding costs are part of the reasonable value of the labor performed); *Plumber's Local 458 Holiday Vacation Fund v. Howard Immel, Inc.*, 151 Wis.2d 233, 445 N.W.2d 43, 44–45 (Ct.App.1989) (employee benefit contributions are wages because they are part of the agreed compensation); *cf., e.g., Ford v. Culp Custom Homes, Inc.*, 731 N.E.2d 468, 475 (Ind.Ct.App.2000) (claim for labor or materials reasonably includes some degree of profit). *But cf., e.g., Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 132 Idaho 754, 979 P.2d 627, 636 (1999) ("While the legislature has provided protection for the recovery of worker's compensation security in the mechanic's lien laws, it has not so provided for any other form of insurance.").

**27.** The Funds claim that Utah's public bond statute "contains language similar to" Utah's private bond statute. We disagree. *Compare* Utah Code Ann. § 14–1–19 (2005) ("If the state ... fails to obtain a payment bond, it shall, upon demand by a person who has furnished labor ... for the work provided for in a contract ... promptly make payment to that person."), *with id.* § 14–2–2 (imposing liability on owners who do not obtain payment bond to laborers "for the reasonable value of the labor").

**28.** Unlike the mechanics' lien statute, recovery under the private bond statute is limited by two considerations: the actual contract price and a determination of reasonableness. However, the mechanics' lien statute has been interpreted to also include a reasonableness requirement. *See, e.g., Graco Fishing & Rental Tools, Inc. v. Ironwood Exploration, Inc.*, 766 P.2d 1074, 1077 (Utah 1988) ("[W]e hold that reasonable transportation charges are lienable."), *superseded by statute*, Utah Code Ann. §§ 14–2–1, –2 (1985); *John Wagner Assoc. v. Hercules, Inc.*, 797 P.2d 1123, 1130 (Utah Ct.App.1990) ("The purpose of the mechanics' and materialmen's lien statutes and likewise the [Payment Bond Statute] is to prevent the owners of land from having their lands improved ... without becoming personally responsible for the *reasonable value of the materials and labor* which enhance the value of those

**626**

statutes' common purpose, we hold that Fringe Benefits are part of "the reasonable value of the labor" as contemplated by the private bond statute.

¶ 51 The Supreme Court of Iowa reached a similar conclusion in *Dobbs v. Knudson, Inc.,* 292 N.W.2d 692 (Iowa 1980), where it held that fringe benefits were part of a "claim for ... labor," explaining:

> Whether a claim is for labor or service is determined not by the nature of what the claimant receives but rather by the nature of what is done to be entitled to receive it. *The issue, therefore, is not whether the payments to the trust funds are fringe benefits or wages but whether the employees ... performed labor or service to become entitled to the payments on their behalf. ...*
>
> ... Thus we hold that the payments to the trusts are for labor within the meaning of [the public bond statute].

*Id.* at 695 (emphasis added) (citation omitted); *see also, e.g., United States Fid. & Guar. Co. v. Arizona State Carpenters Health & Welfare Trust Fund,* 120 Ariz. 79, 584 P.2d 60, 62 (Ct.App.1978) (unpaid fringe benefits were "a cost of labor" under private bond statute). We agree that the beneficiaries performed labor on the Project "to become entitled to the [Fringe Benefits]," *see Dobbs,* 292 N.W.2d at 694, and that those benefits are part of the reasonable value of the labor.

### CONCLUSION

¶ 52 The Funds have standing to pursue claims under Utah's mechanics' lien and private bond statutes, neither of those statutes is preempted by ERISA section 514, and Fringe Benefits are recoverable as part of the value of the labor provided to the Project. Because we reverse the trial court's grant of partial summary judgment in favor of Appellees, we likewise reverse the trial court's award of costs and attorney fees to Appellees.

¶ 53 Reversed.

lands." (emphasis added) (first alteration in orig-inal)).

¶ 54 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, RUSSELL W. BENCH, Judge.